## STANDARD OIL CO. OF LOUISIANA v. PORTERIE, Atty. Gen.

### No. 260.

District Court, E. D. Louisiana.
Aug. 30, 1935.

T. M. Milling, F. L. Hargrove, A. M. Curtis, and Monroe & Lemann, all of New Orleans, for plaintiff.

James O'Connor and A. P. Miceli, Asst. Attys. Gen., for defendant.

Before FOSTER, Circuit Judge, and DAWKINS and BORAH, District Judges.

BORAH, District Judge.

Plaintiff sued to have Act No. 19 of the Third Extra Session of the Louisiana Legislature for the year 1934 declared unconstitutional, null, and void as in violation of the Constitution of the United States, and asked for a temporary restraining order, an interlocutory injunction or injunction pendente lite, and a permanent injunction, enjoining and restraining the defendant in his capacity as Attorney General of the State of Louisiana, his assistants, and the district attorneys of the various judicial districts of the state of Louisiana over whom he has authority and control, from enforcing the provisions of said act. A temporary restraining order was issued on the face of the papers. Thereafter, the case came on for hearing on the application of plaintiff to the statutory three-judge court for an interlocutory injunction, and was considered by that court on the pleadings and on affidavits filed by the plaintiff. Defendant filed no affidavits, but filed the following pleadings:·

(1) A motion to dismiss for lack of jurisdiction;

(2) A motion to dismiss on the grounds that (a) plaintiff was not entitled to relief in equity because it has a plain, adequate, and complete remedy at law, and (b) plaintiff's petition disclosed no cause or right of action; and

(3) An answer.

The court granted plaintiff's application for an interlocutory injunction.

Thereafter, by written stipulation signed by all parties, the case was submitted to the three-judge court "for consideration on the merits and for all purposes, and for final judgment without further hearing or argument," upon the following statement of facts and stipulation:

"(1) The case is submitted upon:

"(a) The petition of the plaintiff, Standard Oil Company of Louisiana, and an-

swer of the defendant, Gaston L. Porterie, Attorney General of the State of Louisiana, on file herein;

"(b) The affidavits of witnesses, testimony of witnesses as stipulated in paragraph (2) hereof, documents and papers attached to the pleadings or heretofore filed herein by the parties, respectively, all of said papers, documents and affidavits to be considered as having been offered and received in evidence without objection on the trial of the merits of the case.

"(2) It is admitted that if the witnesses whose affidavits have been submitted under section (1) b of this stipulation were sworn as witnesses herein, they would testify as set out in their said affidavits; and would testify that if plaintiff's Pension Plan, described in plaintiff's petition, should be modified by Act ·No. 19 of the Third Extra Session of the Louisiana Legislature for the year 1934, the liabilities of plaintiff under said Pension Plan would be immediately increased by a sum greatly in excess of $5,000 and its annual liabilities afterwards accruing would be increased by a sum greatly in excess of $5,000, and this case is to be considered as though said witnesses had been so sworn and had so testified."

The affidavits of the witnesses for the plaintiff which are thus referred·to, and which are uncontradicted by any affidavits on behalf of defendant, reveal the following facts:

Plaintiff, Standard Oil Company of Louisiana, is a Louisiana corporation domiciled at Baton Rouge, La. Defendant, Gaston L. Porterie, is the Attorney General of Louisiana, is a citizen of Louisiana, and his official residence as Attorney General is at New Orleans.

Plaintiff Oil Company is, and has been for many years, engaged in the production, manufacture, and sale of petroleum and petroleum' products in Louisiana. In the conduct of that business, it owns and uses real and personal property valued at more than $40,000,000, and employs throughout the state of Louisiana an average of more than 3,000 men daily. It has established a method of providing old age annuities or pensions for its employees, and in so doing it adopted, by a resolution of its board of directors, a certain "Annuity Plan for the Employees of the Standard Oil Company (New Jersey) and its Participating Subsidiaries," and by said resolution made that annuity plan its method of establishing old age annuities or pensions for its employees. Copies of the resolution and of the plan are set out in the bill of complaint.

The plan was amended effective January 1, 1934, so as to exclude therefrom those thereafter entering or re-entering the service of the Standard Oil Company (New Jersey), or its participating subsidiaries, including Standard Oil Company of Louisiana. This amendment was ratified and concurred in by plaintiff, Standard Oil Company of Louisiana, through its board of directors.

All employees of plaintiff Oil Company received a copy of this annuity plan and were required to sign a receipt for same, and those employees of plaintiff Oil Company desiring to receive additional benefits were required to sign applications for participation furnished them for the purpose of making the application.

Plaintiff Oil Company has 3,761 employees in Louisiana who are entitled under the obligations arising from the above-described annuity plan to partially share in the benefits provided for in said plan, and has 1,516 employees in Louisiana who, by virtue of contributing to the annuity plan under the terms, conditions, and obligations of that plan, are entitled in due course to share in all of the benefits provided in the plan.

At the Third Extra Session of the Louisiana Legislature for the year 1934, which session was held in December, 1934, that Legislature passed Act No. 19, which became effective on January 9, 1935, and reads as follows:

"Section 1. Be it enacted by the Legislature of Louisiana, That whenever any person, firm, corporation or association of persons shall set up, proclaim or otherwise establish or assert it or they have established a system for the pensioning of employees after any particular number of years' service or employment, that should any employee of such person, firm, corporation or association of persons have served as an employee of the said concern for a period of years or not less than one-fourth of the term required to qualify such person to become eligible to receive such pension, that then and in that event, such employee shall become qualified to earn and to receive the proportion of such pension as equals the time he

has been employed by the said concern, as computed against the term of service or employment required for such person to become eligible for said pension.

"Sec. 2. That any reduction in salary or any discharge of any employee shall not affect the right of the said employee to such pension computed on the basis of the average salary or wage which he has received during the term of his employment; provided, however, that this shall not prevent such employer from awarding a higher pension allowance.

"Sec. 3. That any person, firm, corporation, or association of persons or any officer, agent or employee of such person, firm, corporation or association of persons violating any provision of this Act or aiding, abetting, counselling or assisting in the violation thereof, shall be guilty of a misdemeanor and upon conviction shall be fined not less than One Thousand ($1,000.00) Dollars and not more than Five Thousand ($5,000.00) Dollars and imprisoned not less than one year nor more than five years.

"Sec. 4. That all laws or parts of laws in conflict herewith be, and the same are hereby, repealed."

An inspection of this statute shows that it is capable of several interpretations.

This record shows without contradiction that any interpretation, construction, or application of said Act No. 19 will require plaintiff Oil Company to pay greatly increased amounts to its employees entitled to participate in its annuity plan, and will require it to pay large sums of money to employees who are not entitled, under the terms and conditions of said plan, to participate in the benefits arising thereunder, and will require plaintiff Oil Company immediately to contribute to said annuity plan a sum in excess of $1,000,000.

This record, moreover, shows without contradiction that under one construction of said Act No. 19, plaintiff Oil Company would be required to pay pensions predicated on the number of years served by an employee prior to the passage of the act, and the act thus construed would require plaintiff to contribute scores of thousands of dollars to be devoted to the payment of pensions or annuities based upon services completed and paid for prior to the effective date of the act.

This record shows without contradiction that any construction or interpretation of the act makes it impossible for plaintiff Oil Company to contract freely with its employees respecting annuities or pensions, and, moreover, shows that contracting with its employees respecting annuities or pensions is a necessary part of the economic conduct of the business of plaintiff Oil Company.

An examination of Act No. 19 shows that it is applicable only to employers who have voluntarily established annuities or pension plans, and requires such employers to contribute large sums of money to their employees. Employers engaged in like business who have no annuities or pension plans are not burdened with this obligation.

As stated, plaintiff Oil Company employs an average of more than 3,000 men daily in the state of Louisiana, and is often required, as a matter of business, to lay off or discharge a number of said employees. Numbers of its employees are constantly leaving its service and therefore plaintiff Oil Company, its agents or employees, counselors or advisors, under the provisions of said Act No. 19 may become subject to prosecution in numerous cases at the same time, and thus be liable for the payment of fines aggregating an enormous amount of money and to imprisonment for a great number of years. Plaintiff Oil Company's normal labor turnover in Louisiana of employees with five years, or more, of service is not less than 100 employees per annum.

Under any construction, the said Act No. 19 changes, alters, and amends the terms and conditions of the contracts entered into between plaintiff Oil Company and its employees. That act fixes, changes, regulates, and increases the pensions and annuities to be paid by plaintiff Oil Company to its employees, as fixed by the contracts heretofore entered into between plaintiff Oil Company and its employees.

Defendant, Porterie, is charged with the duty of prosecuting violations of the act. He has supervision and control of the district attorneys in the various judicial districts of Louisiana, with the right to instruct said district attorneys to prosecute or not to prosecute violations of the law. He has the right to relieve, supplant, or supersede the district attor-

ney in any criminal proceeding. The record shows without contradiction that he will prosecute plaintiff Oil Company for violation of said Act No. 19, and will instruct the various district attorneys to institute similar prosecutions, or that he will fail to instruct them not to institute such prosecutions and to have plaintiff Oil Company's officers, agents, employees, counselors, or advisors arrested, incarcerated, and prosecuted if plaintiff Oil Company fails to observe the provisions of the act as construed by defendant, Porterie. The said act therefore requires plaintiff Oil Company, its officers, agents, employees, counselors, and advisors to undergo the peril of arrest and incarceration for long periods of time and of large fines for failure to properly construe the provisions of said act.

Plaintiff Oil Company does business in practically all of the sixty-four parishes of the state of Louisiana, and has one or more employees in almost every parish. It will, therefore, be subject to numerous prosecutions and the possibilities of numerous fines aggregating hundreds of thousands of dollars. Its officers, agents, employees, counselors, and advisors will likewise be subject to numerous prosecutions, with the possibility of fines aggregating hundreds of thousands of dollars and imprisonment for literally hundreds of years.

This record shows without contradiction that the injury suffered by plaintiff Oil Company would be irreparable, and that under any interpretation of the act, the cost of compliance to plaintiff Oil Company would be an amount exceeding $1,000,000 and an annual payment of an amount exceeding $50,000 plus the loss of services of plaintiff Oil Company's employees due to arrest and incarceration.

On the basis of the foregoing facts we have reached the legal conclusion that Act No. 19 of the Third Extra Session of the Louisiana Legislature for the year 1934 contravenes the constitutional rights of plaintiff, violates the Constitution of the United States, and is illegal, null, and void for the following reasons:

1. The statute is susceptible of many interpretations and constructions and is unconstitutional as a penal statute, in that the crime created by it is not definitely described and determined by the language of the act itself, which does not fix an ascertainable standard of guilt. A statute, which requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law.

2. Under one construction of the act, plaintiff would be required to pay pensions predicated upon the number of years served prior to the passage of the law. The act thus construed requires plaintiff to contribute large additional sums of money to the payment of pensions, and annuities based upon services long since completed and fully paid for, and would seem to take its property without due process of law.

3. The act arbitrarily and unreasonably restrains, violates, and takes from plaintiff its property right to contract freely with its employees respecting annuities or pensions and thus violates the Fourteenth Amendment.

4. The act applies to employers who have voluntarily established pension plans, requiring them to contribute to their employees large sums of money not contemplated by such plans, without imposing that obligation on employers engaged in like business who have no annuity or pension plans, and thus arbitrarily discriminates against plaintiff in violation of the Fourteenth Amendment.

5. The fines and penalties prescribed by the act are so onerous and drastic as to deprive plaintiff of its constitutional right to contest the validity of the act in the orderly course of procedure and the act thus deprives plaintiff of its property without due process of law.

6. We are also of the opinion that the act impairs the obligations of plaintiff's contracts with its employees in violation of article 1, § 10, and the Fourteenth Amendment.

Let a decree be prepared and presented in accordance herewith.