PONDER, Justice.
 

 The defendant, J. A. Courreges, Jr., was convicted of the crime of obtaining $112 in money by the means of a false or bogus check, or by the means, commonly called, the “Confidence Game.” The crime is denounced by Act No. 43 of 1912, page 51. Upon conviction, the defendant was sentenced to serve a term of not less than one nor more than three years in the penitentiary. He has appealed from the conviction and sentence. '
 

 The record contains five bills of' exception. Bill of Exception No. 1 was taken . to the ruling of the trial court, permitting the district attorney to amend the bill of' information by changing the date-that the offense was alleged to have been committed from May 22, 1941 to May 23, 1941. Bill of Exception No. 2 was taken to the refusal of the trial court to continue the case after permitting the State to amend the bill of information. Counsel -for the defendant concedes that the State had authority to amend the bill of information, but contends that under the provisions of Article 253 of the Code of Criminal Procedure, the defendant w^s entitled to continuance or postponement of the trial.
 

 From the note of testimony attached to the bills, it appears that the alleged bogus check was dated May 22 and cashed on May 23. In drawing up the bill of information, .the district attorney erroneously alleged that the offense was committed on May 22, the date the check was purported to have been drawn, instead of May 23, the date when the check was cashed or the date the alleged offense was committed. On May 22, the defendant had an account - with the bank upon which the check was drawn in the amount of $2.20, but this account was -closed on May 23. After the jury was impaneled and the first witness for the State was placed on the stand, the district attorney requested permission of the court to amend the bill of information by changing the date that the offense was alleged to have been committed from May 22 to May 23, in order that the proof of the date of the commission of the offense would correspond with the date stated in the bill of information. The trial court permitted the district attorney, over the objection of counsel for the defendant, to change the date as requested. Counsel for the defendant then requested the court to continue the case. The trial court refused to continue the case. Counsel for the defendant excepted to the ruling of the court and reserved a bill of exception.
 

 It is contended that the date the offense was committed is the essential element of the case, and the amendment of the bill of information to cure the variance between it and the proof misled and prejudiced the defendant in making his defense to the case. The defendant claims that he came to court prepared to show that he had an account with the bank upon _ which the check was drawn on May 22. His counsel is under the impression that the defendant, having an account with the bank, might be guilty of violating Act No. 209 of 1914, as the funds in the bank were not sufficient to cover the check, but
 
 *67
 
 that the defendant could not be held guilty of violating Act No. 43 of 1912, if he had an account, be it ever so small, with the bank. The defendant raises the same question in his Special Charge No. 1, which he requested to be given to the jury, the basis of Bill of Exception No. 3, to the effect, that the court instruct the jury that if they found from the evidence that the defendant did have an account with the bank on the day the check was issued, that it would be their duty to find the defendant not guilty.
 

 From the per curiam of the trial judge, it appears that on May 21 and May 22, the defendant had an account of $2.20 with the bank upon which the check was drawn. The defendant drew and cashed three other checks, drawn on this bank, on May 21 and 22, in amounts totaling $435, in addition to the check involved herein. The bill of information charged the defendant with obtaining $112 by use and means of the “Confidence Game,” and set forth the manner by which it was consummated. It is alleged therein that" the check was drawn on the bank when the defendant well knew that it was not a valid check, for the reason that the defendant did not have an account in or credit with the bank to pay the check when presented. It is further alleged that the defendant well knew that the check was false, bogus, and worthless, and that it was drawn and cashed with the felonious intent to cheat and defraud.
 

 Act No. 43 of 1912, § 1, provides: “Every person who shall obtain or attempt to obtain from any other person, or persons any money or property, by means or by use of any false or bogus checks, or by any other means, instrument or device, commonly called the confidence game, shall be imprisoned with or without hard Tabor for not less than three months nor more than five years.”
 

 The essence of the offense is the swindling and defrauding of the victim after gaining his confidence. A confidence game is defined in State v. Theriot, 139 La. 741, 72 So. 191, 192, L.R.A.1916F, 683, as “any swindling operation in which advantage is taken of the confidence reposed by the victim in the swindler.” The means that may be used are different and varied. No more certain definition could be given than that method of swindling called the “Confidence Game.” State v. Echeverria, 163 La. 14, 111 So. 474.
 

 “The ‘confidence game’ defined by Cr. Code, div. 1, § 98, Smith-Hurd Stats, c. 38 § 256, consists in gaining possession of money or property by some trick or device, or any swindling operation by which advantage is taken of the trust or confidence which the victim has reposed in the swindler. People v. Rosenbaum, 312 Ill. 330, 143 N.E. 859, 860.” 8 Words and Phrases, Perm.Ed., p. 544, Confidence Game.
 

 Act No. 43 of 1912 is broad and comprehensive in its terms and is designed to cover any swindling operation whereby a victim is defrauded of his money or property by the taking advantage of the trust or confidence which he has reposed in the swindler. Each case arising under this statute largely depends on its own peculiar
 
 *69
 
 facts and circumstances. The mere fact that the defendant, in this case, had a small account of $2.20 with the bank when the checks were drawn is of no particular importance. It would only be relevant to show intent.
 

 Counsel for the defendant relies on the cases of State v. Anderson, 136 La. 261, 66 So. 966; State v. Singleton, 169 La. 191, 124 So. 824, and State v. Williams, 173 La. 1, 136 So. 68.
 

 In the Anderson case, two offenses, identical in all their features, save as to time, were committed, and the defendant, charged with one, objected to the admission of evidence as to the other, unless and until the indictment was amended to correspond with the facts, including the time sought to be proven. The court held that evidence of the other offense was not admissible, stating that otherwise the defendant may be prosecuted for and convicted of both offenses, though guilty of but one.
 

 The defense in the Singleton case was an dlibi. An attempt was made to prove the offense was committed on a different date than that alleged in the indictment, to which the defendant objected on the ground that he had come to court prepared to prove an alibi predicated on the date alleged in the indictment. Under such circumstances, it is readily seen that the date would be essential.
 

 In the Williams case, the bill of information did not charge the defendant with an offense known to the law of the State. An attempt was made to amend the bill of information so as to charge the defendant with a serious offense. Under the circumstances in that case, it would be equivalent to denying the defendant an opportunity to prepare his defense.
 

 Under the provisions of Article 253 of the Code of Criminal Procedure, this court would not be warranted in setting aside the conviction and sentence, unless from a consideration .of the proceedings, it is found that the refusal of the trial judge to continue the case after the bill of information was amended prejudiced the defendant in his defense, or a failure of justice resulted. There is nothing contained in this record to show the defendant was prejudiced in his defense by the amendment or that there was a failure of justice.
 

 We find no error in the rulings of the trial judge refusing to grant the continuance and refusing to give the requested charge to the jury.
 

 The defendant’s Bill of Exception No. 4 was taken to the ruling of the trial court, refusing to give the following special charge: “I charge you that 4f you find from the evidence that there was an agreement, whereby the New Orleans Brewing Company, agreed to hold the checks of the defendant, and not to put them into the bank until a later date that there would not- be an intent to defraud on the part of the defendant, and you should find the defendant not guilty.” The record does not contain any testimony, relating to the facts bearing on this bill. From the per curiam of the trial judge, it appears that one of the defenses urged wa:s that the defendant understood he had a right to
 
 *71
 
 negotiate checks without limit at the brewery, and that such checks would not be transmitted to the bank until requested by him. I - is stated therein tha' evidence was introduced to the effect that there, were occasions when the defendant had arranged with the executives of the brew* ery, the American Brewing Company, to advance him funds for a limited number of days, whereby his check was accepted with the understanding that it would not be transmitted to the bank until a certain date. Ther officials of the brewery denied the existence of any blanket understanding to the effect that all of the checks of the defendant would be so handled, and the defendant’s own testimony indicated that the agreements were applicable only to special and specific occasions. It is further stated in the per curiam that the manner of the defendant’s cashing the four checks, aggregating $547, in a forty-eight hour period, including the check of $112 involved herein, by going at night to the shipping clerks or cashiers of the brewery and persuading them to accept and cash the checks was not indicative of any blanket understanding that these checks would be held at the pleasure of the defendant.
 

 From the facts stated in the per curiam, the requested charge is confusing and misleading. The evidence of an agreement with the officials of the brewery appears to apply to specific and special transactions and is in no way indicative of a general or blanket understanding that any and all checks were to be so held.
 

 The trial judge cannot be compelled to give a special charge which requires qualification or limitation or explanation. Article 390, Code of Criminal Procedure; State v. Poree, 136 La. 939, 68 So. 83; State v. Erwin, 133 La. 550, 63 So. 167; State v. Varnado, 126 La. 732, 52 So. 1006; State v. Hogan, 117 La. 863, 42 So. 352; State v. Nicholls, 50 La.Ann. 699, 23 So. 980.
 

 The defendant’s Bill of Exception No. 5 was taken to the overruling of a motion for a new trial, predicated * on the same matters raised in Bills of Exception No. 1 to No. 4, inclusive. We have determined these questions.
 

 For the reasons assigned, the conviction and sentence are affirmed.