13 So.2d 366

**STATE v. KAVANAUGH.**

No. 36836.

March 8, 1943.

Rehearing Denied April 12, 1943.

2

C. J. Bolin, of Shreveport, for defendant and appellant.

Eugene Stanley, Atty. Gen., Niels F. Hertz, Asst. Atty. Gen., and Frank W. Hawthorne, Sp. Dist. Atty., of Bastrop, for the State, plaintiff and appellee.

HIGGINS, Justice.

The accused was charged in an indictment by the Grand Jury of Lincoln Parish, Louisiana, on April 2, 1936, with having swindled and defrauded, on February 7, 1935, a widowed and inexperienced old lady (now deceased), who was living in a rural section of the parish, out of certain shares of stock valued at $13,000, which had been acquired by her through inheritance.

The defendant, on May 4, 1936, filed an exception on the ground that the venue of the crime was not within the territorial jurisdiction of the court. He also pleaded prescription, and filed a motion to quash,

based upon the ground that the court did not have the right to try the case. On May 8, 1936, the court overruled these pleas. The defendant then applied to this court for writs of certiorari, prohibition and mandamus, which were refused on June 5, 1936. State v. Kavanaugh, No. 33,955 of the docket of this court.

Due to the illness of the defendant, the death of the former district attorney, and other circumstances, the trial of the case was delayed until the present district attorney, who was elected on February 1, 1939, filed a motion, on March 30, 1939, to have the case set for hearing on June 13, 1939. The case was subsequently continued from time to time but was tried on the merits before the judge, without a jury, on January 24, 1942, the defendant, with advice of counsel, having waived trial by jury. The matter was finally argued before the judge on February 27, 1942, and the defendant was found guilty, as charged. The defendant was called for sentence on March 14, 1942, at which time his counsel filed a motion for a new trial, alleging that the minutes of the court did not show that the accused was present in open court when his counsel waived trial by jury, at the time he was arraigned, and therefore, the defendant should have been tried by a jury, as he had not personally consented to having the case tried by the judge. The present district attorney who prosecuted the case acquiesced in the motion for a new trial and the judge granted it. The district attorney then moved that the accused be arraigned. Upon his arraignment on March 14, 1942, the defendant pleaded not guilty.

The court thereupon inquired if the accused desired to be tried before a jury or by the court. Defendant's counsel requested a recess, in order to discuss the matter with his client and later, in open court, informed the judge that the defendant desired to be tried by the court, waiving trial by jury. The district attorney then asked the defendant if he so elected, whereupon, the accused, in proper person, reiterated the statement of his attorney that he waived trial by jury. The case was fixed for trial on March 27, 1942, and on March 24, 1942, the defendant filed a motion to quash the indictment on the ground that it did not set forth any offense under the law. The trial was set for April 28, 1942, at which time the defendant filed motions to recuse the judge, and to be permitted to withdraw his waiver of trial by jury. The judge recused himself and appointed a special judge to try the case, and referred the motion of the defendant, to withdraw his election to be tried before the court, to the special judge, who, after hearing, refused it. The defendant then filed a motion to have the court order the district attorney to nolle prosequi the charge and dismiss the case, and in the alternative, prayed that the district attorney be recused. The district attorney acquiesced in the motion of recusation and the trial judge sustained it, and appointed a special district attorney, but overruled the motion demanding that the district attorney nolle prosequi the case. The matter was then tried before the special judge with the special district attorney prosecuting, on June 24, 1942, and the defendant was found guilty as charged. He

filed motions for a new trial and in arrest of judgment, both of which were overruled. On June 30, 1942, the accused was sentenced to a period of not less than one year nor more than three years in the State Penitentiary.

The defendant has appealed and relies upon seventeen bills of exception for a reversal of the judgment of conviction and sentence.

Bills of exceptions 1, 2, 3 and 4 were taken when the defendant's pleas to the jurisdiction of the court for lack of venue and of prescription were overruled.

 The indictment alleges that the shares of stock in question were obtained from the old lady in Lincoln Parish, and the evidence shows that part of it was received from her at her home in a rural section of the parish and the balance thereof at the Bank of Ruston, Lincoln Parish. The jurisprudence is clear that the venue of the alleged crime in a case like the present one is at the place where the money or property was obtained. State v. Matheny, 194 La. 198, 193 So. 587; State v. Simone, 149 La. 287, 88 So. 823; and State v. Roy, 155 La. 238, 99 So. 205. Therefore, the Third Judicial District Court, Lincoln Parish, Louisiana, had jurisdiction of the case.

 The indictment contains a statement that the crime or offense was not made known to any judge, district attorney, or grand jury until during March, 1936. The accused was indicted on April 2, 1936. It was shown that in 1934 the old lady, Mrs. Viva Hancock, inherited from her brother, Scott Hamilton, certain stock and bonds in excess of $20,000. Thereafter, the defendant made repeated visits to her home and prevailed upon her to sign a contract authorizing an exchange, dated February 7, 1935, whereby he obtained certain shares of stock from her, upon the representation that he was the owner and holder, or would become such owner and holder, within fifteen days from the date thereof, of 120 shares of Louisiana Power & Light Company preferred stock. He was granted thirty days' within which to either deliver to her the Louisiana Power & Light Company stock, or return to her the shares of stock of the American Gas & Power Company, which she delivered to him. On March 5, 1935, he wrote her a letter from Shreveport, stating that " * * * everything is coming along fine * * *. *Have the majority of your stock now,* and think that by the latter part of next week will have the balance. Have been a little slow in getting it but some times it is just a little hard to get a big block at one time. Will be over to see you the latter part of next week or the first part of the following week." On November 11, 1935, he wrote her again, stating: "I know that you have been anxious to hear something from me regarding your bonds * * *. I give you my word of honor that your bonds will be returned to you as per contract * * *. I am very sorry for the delay and worry to which you have been put, and feel sure that within a very short time the bonds will be in your hands. Thanking you for your consideration, and again assuring you that *your faith in me has* not been misplaced * * *." (Italics ours.) As a result of

his repeated assurances that he would deliver to her the Louisiana Power & Light Company stock, or return her own stock, she did not file charges against him until March, 1936. It was shown that this was the first time the matter had been brought to the attention of a judge, a district attorney, or a grand jury. The plea of prescription was, therefore, properly overruled.

Bill No. 5 was reserved when the motion to quash the indictment was overruled by the trial judge. The motion is predicated on the theory that the indictment was not properly drawn and did not charge a crime under the laws of this State and that it shows merely civil liability. The indictment reads, as follows:

"State of Louisiana

Parish of Lincoln, Third Judicial District Court:

"The Grand Jurors, of the State of Louisiana, good and lawful men of the parish of Lincoln, duly empaneled, sworn and charged to enquire for the body of said Parish, acting in the name and by the authority of the State of Louisiana, on their oath do present: A. J. Kavanaugh in the Third Judicial District of the State of Louisiana, on the 7th day of the month of February, in the year of Our Lord, 1935, in the Parish, District and State aforesaid, *did wilfully, feloniously and maliciously and unlawfully,* while doing business under the trade name of United Securities Company, *obtain* from Mrs. Viva E. Hancock, 7 M (7,000) shares of American Gas & Power Company 5% stock, maturity of 1953, and 6 M (6,000) shares of American Gas &

Power Company 6% stock, maturity of 1939, of a total value of Thirteen Thousand ($13,000) Dollars, *with the felonious intent to defraud the said Mrs. Viva E. Hancock, by means and use of the confidence game;* that is, the said A. J. Kavanaugh *obtained* said stock from said Mrs. Hancock *by promising* that he would, within thirty days, exchange said stock for one hundred and twenty shares of 6% preferred stock of the Louisiana Power & Light Company, or deliver back to said Mrs. Hancock the aforesaid shares of American Gas & Power Company stock; and that the said Mrs. Hancock, *believing the representations so made by said A. J. Kavanaugh, and relying upon them, endorsed and delivered said American Gas & Power Company stock to said A. J. Kavanaugh,* but that the said A. J. Kavanaugh, doing business as aforesaid, has failed and refused to deliver to said Mrs. Hancock the Louisiana Power & Light Company stock, as above stated, within the time limit provided, notwithstanding demand that he do so, and has likewise failed *and refused to deliver back to said Mrs. Hancock, shares of American Gas & Power Company obtained from said Mrs. Hancock, or its equivalent, notwithstanding amicable demand that he do so, and has failed and refused to deliver back to said Mrs. Hancock the said American Gas & Power Company stock, or its equivalent, or said number of shares of Louisiana Power & Light Company stock, as aforesaid, notwithstanding demand that he do so, but instead has converted said American Gas & Power Company stock to the use and benefit of the said A. J. Kavanaugh, all of which*

*was done or occasioned by the said' fraud-ulent scheme of the said A. J. Kavanaugh to deprive said Mrs. Hancock of her said stock.*

"And your Grand Jurors, as aforesaid, give the court to further understand that the said crime and offense was not made known to any judge, district attorney or grand jury having jurisdiction until the month of March, 1936, contrary to the form of the Statutes of the State of Louisiana, in such cases made and provided, in con-tempt of the authority of the State of Loui-siana and against the peace and dignity of the same." (Italics ours.)

Sections 1 and 2 of Act No. 43 of 1912, generally referred to as the Confidence Game Statute, under which the defendant was charged, provides:

"Section 1. Be it enacted by the Gen-eral Assembly of the State of Louisiana,

*"That every person who shall obtain or* attempt to obtain *from any other person,* or persons *any* money or *property, by means or by use of any false or bogus checks, or by any other means, instrument* or *device, commonly called the confidence game,* shall be imprisoned with or without hard labor for not less than three months nor more than five years. [Italics ours.]

"Section 2. Be it further enacted, etc.,

"That in every affidavit, information or *indictment under the preceding section it shall be deemed and held a sufficient de-scription of the offense to charge that the accused did,* on etc., *unlawfully and feloni-ously obtain,* or attempt to obtain, (as the case may be,) from A. B. (*here insert the*

*name of the person* or persons *defrauded* or attempted to be defrauded *and the man-ner in which he was defrauded,* or the at-tempt to defraud was made,) *his money (or property,* in case it be not money,) *by means and use of the confidence game."* (Italics ours.)

In the case of State v. Courreges, 201 La. 62, 9 So.2d 453, the defendant was convict-ed under the above statute, the information charging that he had fraudulently issued four checks aggregating $547 on a bank ac-count in which he had only $2.20. The de-fendant's attorney argued that his client might be guilty of violating Act No. 209 of 1914, which makes it an offense to issue checks against a bank account with insuffi-cient funds to cover them, but that he had not violated Act No. 43 of 1912, because the holder of the checks in question merely trusted him and on several occasions had agreed to hold similar checks when its rep-resentatives knew that there were insuffi-cient funds on deposit in the bank to pay them. In analyzing the above-quoted pro-visions of the Act, the court, on page 455 of 9 So.2d, stated:

"The essence of the offense is the swindling and defrauding of the victim after gaining his confidence. A confidence game is defined in State v. Theriot, 139 La. 741, 72 So. 191, 192, L.R.A.1916F, 683, as 'any swindling operation in which advantage is taken of the confidence re-posed by the victim in the swindler.' The means that may be used are different and varied. No more certain definition could be given than that method of swindling

called the 'Confidence Game.' State v. Echeverria, 163 La. [13] 14, 111 So. 474.

" 'The "confidence game" defined by Cr. Code, div. 1, § 98, Smith-Hurd Stats. c. 38, § 256, consists in gaining possession of money or property by some trick or device, or any swindling operation by which advantage is taken of the trust or confidence which the victim has reposed in the swindler. People v. Rosenbaum, 312 Ill. 330, 143 N.E. 859, 860.' 8 Words and Phrases, Perm.Ed., p. 544, Confidence Game.

"Act No. 43 of 1912 is broad and comprehensive in its terms and is designed to cover any swindling operation whereby a victim is defrauded of his money or property by the taking advantage of the trust or confidence which he has reposed in the swindler. Each case arising under this statute largely depends on its own peculiar facts and circumstances. The mere fact that the defendant, in this case, had a small account of $2.20 with the bank when the checks were drawn is of no particular importance. It would only be relevant to show intent."

The conviction and sentence were affirmed.

 The indictment in this case alleges that the defendant, with the felonious intent of defrauding Mrs. Hancock by means and use of a confidence game, made certain representations to her and, believing in them, she entrusted and delivered the stock in question valued at $13,000 to him, and he failed and refused to return it to her, notwithstanding amicable demand,

and instead converted it to his own use and benefit. The indictment sets forth facts covering the representations made by the defendant through which he gained the confidence of Mrs. Hancock and that she believed and relied on them, and that in and through them he obtained the stock from her. In short, that after gaining her confidence and trust he betrayed her and defrauded her out of the stock. It also alleges the manner in which he is said to have intended to and did defraud her and that all of this was done or occasioned in furtherance of his fraudulent scheme to deprive her of her stock. It, therefore, cannot be said that the indictment does not charge the defendant with having acted in bad faith and that the transaction was merely a civil one. It is only by separating certain allegations of fact from the other alleged facts and parts of the indictment that defendant's attorney arrives at the conclusion it was a civil matter. Even in a case where the indictment or information contains repugnant allegations or is uncertain, the defendant is not entitled to have it quashed, the unnecessary allegations being treated as surplusage and the court having the discretion to order the indictment to be made clearer. Code of Criminal Procedure, Articles 240 and 252. We agree with the trial judge that the allegations of the indictment sufficiently track the provisions of Act No. 43 of 1912 to inform the defendant of the manner in which the alleged offense was committed and that the indictment does set forth a violation of the provisions of the Confidence Game Statute.

Counsel for the defendant relies upon the case of State v. Ratcliff, 183 La. 1081, 165 So. 305, where the defendant moved to quash the indictment which charged him with having fraudulently uttered and published as true a certain forged mortgage note. The court found from other allegations of fact in the indictment that it described a genuine instrument and, therefore, did not charge a crime. The alleged offense having been committed on February 24, 1925, the case was considered under the common law and not under Articles 240 and 252 of the Code of Criminal Procedure, which went into effect in 1928.

Defendant's counsel also cites State v. Glaser et al., 182 La. 787, 162 So. 622, where the indictment charged the defendant with violating Act No. 43 of 1912 and obtaining money by false and bogus instruments through forging the name of E. B. Settoon. From the allegations in the indictment, the court concluded that Settoon had authorized his signature and in the absence of other allegations of bad faith and misrepresentation, the indictment failed to set forth sufficient facts to bring the alleged transaction within the provisions of the statute.

From the foregoing, it is clear that both of the above cases are not in point.

Bills Nos. 6, 7, 9 and 10 were based on the rulings of the trial court in refusing to permit the defendant to withdraw his waiver of trial by a jury.

Article 259 of the Code of Criminal Procedure reads: "In all felony cases, not capital, or necessarily punishable with imprisonment at hard labor, the defendant shall at the time of arraignment be informed by the court that he may waive trial by jury and elect to be tried by the judge alone. If he so elect the judge shall fix and try the case without a jury according to the prescribed rules of the court."

In the recent case of State v. Williams, 202 La. 374, 11 So.2d 701, decided December 30, 1942, the defendant was charged in a bill of information with stealing four automobile tires valued at $58. He appeared for arraignment on October 1, 1942, without counsel, and the judge explained that he had a right to elect whether to be tried by the judge or by a jury, and he chose to be tried by the judge, and told the judge that Mr. Cyril F. Dumaine would be his lawyer. The case was set for trial on October 8th and the accused and his attorney (Mr. Dumaine) were served with notice thereof on October 5th and 6th, respectively. When the case was called for hearing, the defendant's attorney requested a continuance and also moved to withdraw the waiver of trial by jury. The court overruled the motion and the accused was tried, convicted, and sentenced. In annulling the judgment below, we pointed out that the constitutional right of trial by jury in criminal prosecutions was jealously guarded and that the accused could not be deprived of that right, except on his voluntary election. We quoted with approval from the case of State v. Touchet, 33 La.Ann. 1154, as follows: "His waiver of jury as to the first trial may be presumed to continue as to the new trial, un-

less timely application be made to revoke the same; but he cannot be deprived of this right of revocation on timely application. The only limitation on his right would be that his application should be timely—that is, made in such season as not substantially to delay or impede the course of justice. In the present case, the trial might have proceeded before a jury on the day when it was tried before the judge, and the application, made prior thereto, was entirely seasonable, and should have been granted."

The alleged theft took place on August 23, 1942 and the information was filed on September 10th. He was arraigned on October 1st, and the case set for hearing on October 8th. There had been no previous continuance or delay. We concluded that the trial judge erred in refusing to permit the defendant to withdraw his waiver of trial by jury, annulled the conviction and sentence, and remanded the case for a new trial.

In the instant case, the defendant, in the first trial, with the benefit of counsel, waived trial by jury and was convicted by the judge who granted him a new trial when the district attorney acquiesced in his motion therefor. When the defendant was arraigned the second time, the court recessed in order to permit him to confer with his attorney to determine whether or not he wished to be tried before the jury or the judge, and he chose the latter. In open court both defendant's counsel and the defendant personally made it clear that they had so decided. In the judge's per curiam, he pointed out that there had been previous continuances; that there were two criminal terms of court—six months apart—one in March and the other in September; that the arraignment took place on March 14, 1942, and the defendant, at that time, elected to be tried by the judge and waived trial by jury; that the case was set for hearing on March 27, 1942, and on March 24, 1942, the defendant filed a motion to quash, which was fixed to be heard on April 28, 1942; and that on this date, he filed a motion to recuse the judge, and subsequently, a motion to recuse the district attorney, resulting in the appointment of a special judge and a special prosecutor, so that, when he went to trial on June 24, 1942, if his motion to withdraw the waiver of trial by jury had been granted, the case would have had to have been continued until the September jury term.

The special judge states, in substance, that the defendant, when confronted with the fact in March, that he would be tried before a jury, elected to be tried before the judge, and then when faced with the fact that he was about to be tried before the judge, he wanted to revoke his previous waiver of jury trial, and that this was done for the purpose of delaying the trial until the next jury term in September, and that to allow the defendant to thus proceed could delay the trial indefinitely. In other words, the defendant was simply trying to further delay the trial of the case.

■ Under these facts and circumstances, as well as those set forth in the beginning of this opinion, we do not consider that the application to withdraw the waiver was timely made, because the granting

of it would result in a substantial delay in the trial of the case and "would impede the course of justice". Such was not the case in State v. Williams, supra.

■ The defendant also complains that the special judge was not the one before whom he had elected to be tried. He does not say that the special judge was biased or prejudiced against him or treated him unfairly. It must be remembered that it was on the defendant's own motion that the regular judge, who found the defendant guilty on the first trial, recused himself. As it appears that the purpose of defendant's motion was to gain further delay, we find no error in the trial judge's ruling.

■ Bill No. 8 was reserved when the trial court refused the defendant's motion to order the district attorney to nolle prosequi the case, or that the court do so on its own motion. This request was clearly without merit, because the district attorney has the sound discretion in exercising the right to enter a nolle prosequi, without obtaining the consent or permission of the court. Article 329, Code of Criminal Procedure.

■ Bill of exception No. 11 was reserved when the trial judge refused the defendant's request to order the special district attorney not to confer with the regular district attorney outside of the courtroom, while the regular district attorney was a witness for the State and had been excluded from the courtroom under the ruling of the court. The discussions between them were held out of the courtroom and the presence of the jury. The district attorney was a material witness and testified in the case and the special district attorney had a right to interview the State's witness out of the presence of the jury and the court. In any event, the defendant fails to show in what way he suffered any prejudice or harm as a result thereof.

■ Bills Nos. 12 and 13 were reserved when the trial judge refused to admit two letters written by the recused district attorney, in evidence, for the purpose of showing that the recused district attorney had treated the matter as a civil case and not as a criminal one. The evidence was excluded on the ground that it was irrelevant and immaterial, under Revised Statutes, § 985, Dart's Criminal Statutes, Article 601, which provides: "In all criminal cases where injury to the person or property has been sustained, the party injured or damaged shall have his civil action for damages, notwithstanding the conviction."

Counsel for the defendant, while referring to these two bills of exceptions, has not developed them in his brief. These bills were reserved while the recused district attorney was testifying under cross-examination, having been called for that purpose by the defendant. The record shows that the district attorney, some two years before his election, was employed by Mrs. Hancock to represent her to recover the shares of stock or their value. The defendant, represented at that time by other counsel, admitted his liability and repeatedly promised to pay the default civil judgment of $13,000 rendered against him in Caddo Parish, where he resided. He was granted every consideration and indulgence, upon

professing his good faith, but repeatedly broke his promises to pay, notwithstanding the fact that he was fully apprised of the ill health and indigent circumstances of the old lady, who subsequently died in 1942. He did pay $650 on account under the strongest urgings and warnings that the civil and criminal cases would be pressed. The attorney for Mrs. Hancock, both before and after the indictment was returned, leniently and liberally indulged the defendant and even after he was district attorney, was very patient with the accused. The recused district attorney acquiesced in the defendant's motion to recuse himself and the special district attorney at no time, in any way, handled or interested himself in the civil matter. The excluded letters do not contain any information that was not given to the judge by the recused district attorney while testifying under cross-examination, because he frankly states that in order to help the old lady in her dire distress and poverty, if the defendant had only reimbursed her to the extent of $1,800, he would not have been disposed to press the case against him. The $650 which was paid by the defendant went to the old lady for the purpose of buying food, medicines, and securing medical attention for her.

Under the express provisions of Article 557 of the Code of Criminal Procedure, the improper rejection of evidence is not a ground for granting a new trial, unless it appears, after an examination of the record, that the error complained of probably resulted in a miscarriage of justice or was prejudicial to the substantial rights of the accused. Learned counsel for the defendant has failed to make such showing and as the matter was fully brought out before the jury on cross-examination of the recused district attorney, we fail to see how the defendant's rights, even conceding there was error in the rejection of the letters, were prejudiced or adversely affected.

Bill No. 14 was reserved when the court permitted the State to correct the minutes to show that the bill of indictment was actually returned in open court by the Grand Jury. The recused district judge and the foreman of the Grand Jury both testified that the indictment was returned in open court by the Grand Jury and the court permitted the minutes to be corrected to conform with the facts. This ruling was eminently correct.

Bills Nos. 15, 16 and 17 were reserved when the trial judge overruled the motions in arrest of judgment and for a new trial. These motions cover the matters that we have already discussed in the previous bills of exceptions and present nothing new for our consideration.

For the reasons assigned, it is ordered, adjudged and decreed that the judgment of conviction and the sentence of the court are affirmed.

ODOM, J., absent.

O'NIELL, Chief Justice (dissenting).

My principal reason for dissenting from the prevailing opinion in this case is that the indictment does not charge that the defendant obtained Mrs. Hancock's shares of American Gas & Power Company stock

by means of a false pretense or false representation concerning a past or present fact. On the contrary, the accusation is merely that Kavanaugh obtained the shares of stock under a contract with Mrs. Hancock, by which he agreed to exchange her shares of stock for 120 shares of Louisiana Power & Light Company stock within 30 days, or return to Mrs. Hancock her shares of American Gas & Power Company stock. It is not charged that Kavanaugh represented to Mrs. Hancock that he already owned the 120 shares of Louisiana Power & Light stock. On the contrary it is stated in the contract which Kavanaugh is accused of violating that he was the owner and holder or would become the owner and holder within fifteen days of the 120 shares of the Louisiana Power & Light stock. It is sufficient to say that it was not charged in the indictment or proved on the trial of the case, and is not contended on behalf of the State, that Kavanaugh made any false representation or false pretense with regard to the ownership of the 120 shares of Louisiana Power & Light stock.

The record shows that Kavanaugh was a regularly licensed dealer in securities, that he had complied with the requirements of the statute on the subject, Act No. 177 of 1920, and held the necessary certificate signed and issued by the Secretary of the Louisiana Securities Commission. His latest certificate was dated June 13, 1934, was "good for one year" from that date unless sooner revoked, and was in force on the 7th of February, 1935,—the date of the transaction complained of in this prosecution.

The allegation in the indictment that Kavanaugh "converted said American Gas & Power Company stock to the use and benefit of the said A. J. Kavanaugh" partakes of a charge of embezzlement; but the record discloses that if that crime was committed it was committed in Caddo Parish— in Shreveport—where the alleged conversion took place—if in fact it did take place. The defendant is not charged with embezzlement in this prosecution. If he were charged with embezzlement the district court in Lincoln Parish would not have jurisdiction. In a prosecution for the unlawful conversion of the property or money of another the venue is in the parish where the conversion took place. State v. Sullivan, 49 La.Ann. 197, 21 So. 688, 62 Am. St.Rep. 644; State v. Nahoum, 172 La. 83, 133 So. 370; State v. Smith, 194 La. 1015, 195 So. 523. That was the basis for the defendant's exception to the jurisdiction of the court in Lincoln Parish; which exception was overruled; and which ruling was complained of by way of a petition for a writ of certiorari; which was denied by a majority of the members of this court on May 25, 1936,—nearly seven years ago. In fact an affidavit was filed in Caddo Parish, by a son of Mrs. Hancock, charging Kavanaugh with embezzlement committed in that parish on the same facts on which the present indictment is founded. This prosecution therefore is not for the crime of embezzlement but for obtaining the shares of stock of Mrs. Hancock by means of the so-called confidence game, which, as set forth specifically in the indictment, was merely a business transaction in which Kavanaugh failed to fulfill his promise.

Act No. 43 of 1912, which makes it a crime to obtain or to attempt to obtain money or property by means of any false or bogus check, or by any other means, instrument or device, commonly called the confidence game, is valid legislation so far as it makes it a crime to obtain money or property by means of a false or bogus check, because a "false or bogus check" has a meaning which is well defined and well known by everybody. But my opinion is that this statute is unconstitutional so far as it purports to make it a crime to obtain or to attempt to obtain money or property by any other means, instrument or device, said to be "commonly called the confidence game." The statute does not define or determine what "other means", or what kind of instrument or device, shall be deemed a "confidence game", subjecting the offender to imprisonment as a felon. Obtaining or attempting to obtain money or property by means of a so-called confidence game is not a common-law crime. And it is well settled that no act or conduct, however reprehensible, is a crime in Louisiana unless it is defined and made a crime, clearly and unmistakably, by statute. State v. Williams, 7 Rob. 252; State v. King, 12 La.Ann. 593; State v. Smith, 30 La.Ann. 846; State v. Peters, 37 La.Ann. 730; State v. Gaster, 45 La.Ann. 636, 12 So. 739; State v. Desforges, 47 La.Ann. 1167, 17 So. 811; State v. De Hart, 109 La. 570, 33 So. 605; State v. Breffeihl, 130 La. 904, 58 So. 763, 40 L.R.A.,N.S., 535; State v. Comeaux, 131 La. 930, 60 So. 620; State v. Robinson, 143 La. 543, 78 So. 933; State v. Bischoff, 146 La. 748, 84 So. 41;

State v. Mullen, 160 La. 925, 107 So. 698; State v. Schmidt, 163 La. 512, 112 So. 400; State v. Williams, 173 La. 1, 136 So. 68; State v. Whitlock, 193 La. 1044, 192 So. 697; State v. Maitrejean, 193 La. 824, 192 So. 361.

My opinion is that Act No. 43 of 1912, so far as it undertakes to make it a crime for a person to obtain or to attempt to obtain money or property by any means, instrument or device, commonly called the confidence game, is not rendered constitutional by the provision in section 2 that in any affidavit or bill of information or indictment for a violation of the act it shall be held to be a sufficient description of the offense to insert the name of the person defrauded or attempted to be defrauded and the manner in which he was defrauded or in which the attempt to defraud was made. That provision in the statute is not effectual, because it is an attempt to confer upon the prosecuting officer or the grand jury the legislative function of defining the crime to be charged in a bill of information or indictment. 12 C.J. 859; 16 C.J.S., Constitutional Law, § 140; United States v. Reese, 92 U.S. 214, 220, 23 L.Ed. 563; Standard Oil Co. of Louisiana v. Porterie, D. C., 12 F.Supp. 100; State v. Comeaux, 131 La. 930, 60 So. 620; City of Shreveport v. Price, 142 La. 936, 77 So. 883; State v. Brinson, 149 La. 320, 89 So. 18; State v. Gardner, 151 La. 874, 92 So. 368, 369; State v. McClellan, 155 La. 37, 98 So. 748, 31 A.L.R. 527; State v. Staub, 182 La. 1040, 162 So. 766; State v. Maitrejean, 193 La. 824, 192 So. 361; State v. Whitlock, 193 La. 1044, 192 So. 697. In State v. Comeaux,

131 La. 930, 60 So. 620, the doctrine was stated briefly, thus: "In Louisiana all crimes are statutory, and the determination and definition of the act; which are punishable as crimes, are purely legislative functions."

In the case of State v. Theriot, 139 La. 741, 72 So. 191, L.R.A. 1916F, 683, in 1916, Judge Winston Overton, afterwards a justice of this court, held, in what this court characterized as a well-considered opinion, that the provision in Act No. 43 of 1912, making it a crime to obtain or attempt to obtain money or property "by any other means, instrument or device, commonly called the confidence game", was unconstitutional. It was stated in the brief of the attorney general, quoted in the opinion rendered by this court, that the constitutionality of the provision in the act relative to false or bogus checks was not questioned. Judge Overton's so-called "well-considered opinion" was reversed by this court on the authority of three Illinois cases in which the supreme court of that state declared constitutional a statute of Illinois. In this Theriot case the author of the opinion pointed out that a Missouri statute similar to the Illinois statute was declared unconstitutional by the Supreme Court of Missouri in State v. Cameron, 117 Mo. 371, 22 S.W. 1024, on the ground that the act did not inform the defendant of the nature and cause of the accusation. And the author of the opinion in the Theriot case said that no such objection could be urged against Act No. 43 of 1912 because in section 2 the act required the indictment to set forth the manner in which the party

was defrauded or in which the attempt to defraud was made. The author of the opinion did not refer to any of the many decisions of this court maintaining that the defining of crimes is a legislative function, which cannot be delegated to or exercised by a district attorney or grand jury. And the author of the opinion in the Theriot case said, in conclusion, this [139 La. 741, 72 So. 192, L.R.A. 1916F, 683]: "The question of the constitutionality of Act 43 of 1912 is debatable, and may be doubtful; but the opposition between the Constitution and the law is not sufficiently clear and strong to warrant us in decreeing their incompatibility."

I dissented from the decision in the Theriot case, and I adhere to the opinion that the decision was fundamentally wrong, particularly in ignoring the doctrine that the defining of crimes is a legislative function.

In State v. Hill, 160 La. 579, 107 So. 433, it was held that the indictment for attempting to obtain $200 by means of the confidence game was valid; but the facts stated in the indictment were that the false representation on which the attempt was made was a false representation of a present fact, namely, that a roll of bills which the defendants pretended to have found contained $2,200, which they proposed to exchange with the prospective victim of the fraud for his $200. In that case I dissented because the decision was contrary to the doctrine—which was not even referred to—that the defining of crimes is a legislative function.

In State v. Echeverria, 163 La. 13, 111 So. 474, the charge was that the defendant obtained property fraudulently by means of the confidence game, the means used being a false or bogus draft. On the theory that a bogus draft was the same as a bogus check I concurred in the decree in that case.

In the case of State v. Hart, 195 La. 184, 196 So. 62, 65, the defendant was charged with the crime of obtaining $27,000 by means of the confidence game, but the only question presented was the question of venue. The facts set forth in the indictment showed that the $27,000 was obtained by false pretenses or representations of past and present facts concerning the amount of the bid for which a contract was let to Hart and his associates in the contracting business. In the course of the opinion it was said: "It is pointed out that the crime is analogous to the crime of obtaining money or property by false pretenses. 25 C.J. 659, sec. 102." And here the court cited decisions, which are cited also in the prevailing opinion in the present case, in which decisions it was held that the venue in a prosecution for obtaining money by false pretenses was in the parish in which the money was obtained, no matter where the false pretenses were made. In the prevailing opinion in the present case the analogy between obtaining money by false pretenses and obtaining money by means of the so-called confidence game, otherwise than by means of a bogus check, is stated thus: "The jurisprudence is clear that the venue of the alleged crime in a case like the present one is at the place where the money or property was obtained. State v. Matheny, 194 La. 198, 193 So. 587; State v. Simone, 149 La. 287, 88 So. 823; and State v. Roy, 155 La. 238, 99 So. 205."

Two of the cases cited were prosecutions for obtaining money by false pretenses.

In the case of State v. Courreges, 201 La. 62, 9 So.2d 453, 454, from which the court quotes extensively in the prevailing opinion in this case, the prosecution and conviction were, as stated in the opening paragraph of the opinion in the Courreges case, for "obtaining $112 in money by the means of a false or bogus check, or by the means, commonly called, the 'Confidence Game.' The crime is denounced by Act 43 of 1912, page 51."

The statute is valid legislation so far as it denounces obtaining money or property by means of a false or bogus check. That being the accusation in the Courreges case, the dissertation in the opinion in that case, quoted extensively in the prevailing opinion in the present case, on the question of constitutionality of the statute so far as it denounces the obtaining or attempting to obtain money or property "by any other means, instrument or device, commonly called the confidence game", was entirely beside the question in the Courreges case and should not be considered as authority.

The decision in State v. Theriot, 139 La. 741, 72 So. 191, L.R.A. 1916F, 683, and in State v. Hill, 160 La. 579, 107 So. 433, was virtually overruled in State v. Whitlock, 193 La. 1044, 192 So. 697, where the court held, unanimously, that Section 861 of the

Revised Statutes of 1870, Article 786 of Dart's Criminal Statutes, which undertook to make it a crime to attempt to corrupt or to awe a juror in the trial of a pending case, was unconstitutional or ineffectual because the statute did not define the crime but left it to the prosecuting officer or grand jury to define or describe the crime in the bill of information or indictment, thereby attempting to invest the district attorneys and grand juries with a legislative function. The judge of the district court, on that ground, sustained a motion to quash the bill of information. This court, unanimously, affirmed the ruling, and quoted with approval the two concluding paragraphs of the district judge's opinion (193 La. loc.cit. 1049, 192 So. loc.cit. 698), —thus:

" 'All criminal statutes must be strictly construed and in the construed penal statutes Courts cannot take into view the motives of the law makers but that are expressed in the statutes. To solicit a juror in the manner as here charged is most assuredly an act that invades the very safeguard of our social order, and is a defect in our criminal jurisprudence requiring Legislative remedy.

" 'With regret the Court finds itself forced to sustain the motion to quash.' "

Then the court quoted, in the Whitlock case, from the decision of the Supreme Court of the United States in the case of United States v. Reese, 92 U.S. 214, 220, 23 L.Ed. 563,—thus: " 'Every man should be able to know with certainty when he is committing a crime. * * * It would certainly be dangerous if the Legislature could set a net large enough to catch all possible offenders and leave it to the courts to step inside and say who could be rightfully detained and who should be set at large. * * *' "

And in Whitlock's case the court quoted from State v. Gardner, 151 La. 874, 92 So. 368, 369, where the court had held that the provisions in the "Locke law", Act No. 57 of 1908, purporting to make it a crime for "any person * * * [to] engage in encouraging, promoting, aiding or assisting in the operation of a betting book, or a French Mutual pooling device, upon any kind of horse race or races, or in selling auction pools upon any horse race which are hereby declared to be gambling, or * * * by any other device, encourage, promote, aid or assist any person or persons to bet or wager upon a horse race or races * * *" was unconstitutional and ineffectual so far as it forbade the encouraging of betting on horse races "by any other device".

This court, in affirming the ruling, declared (193 La. loc.cit. 1052, 192 So. loc. cit. 700) : "It has long been the rule, constantly adhered to, that criminal statutes must receive strict interpretation, and that such statutes cannot be extended to cases not included within the clear import of their language. In short, that no act is a crime, which is not clearly and unmistakably made a crime by statute. State v. Slave, King, 12 La.Ann. 593; State v. Peters, 37 La.Ann. 730; State v. Gaster, 45 La.Ann. 636, 12 So. 739; State v. De Hart, 109 La. 570, 33 So. 605; State v. Breffeihl, 130 La. 904, 913, 58 So. 763, 40

L.R.A.,N.S., 535; State v. Comeaux, 131 La. 930, 60 So. 620; State v. Leroy, 143 La. 186, 78 So. 441; State v. Williams, 173 La. 1, 136 So. 68."

And in the Whitlock case, 193 La. at page 1054, 192 So. at page 700, the court cited State v. Maitrejean and State v. Harris and Rhodes, 193 La. 824, 192 So. 361, and, referring to the decision in those cases, declared: "We pointed out that only the Legislature, under the Constitution, was granted the power and authority to define what acts constituted criminal offenses and to provide the penalties for the violation thereof. So that, in the instant case, to construe the words 'or otherwise,' as used in [Section 861 of the Revised Statutes] Article 786 of Dart's Criminal Statutes, as the State has asked us to do, would be indirectly authorizing the various judges, district attorneys, grand jurors and petit. jurors to define what acts they considered were prohibited by these two words of the statute. This, of course, would lead to a result equally as unsatisfactory as the present unfortunate situation, which results from the statute being inadequate to cover all cases where persons attempt to unduly influence jurors in the just and honest performance of their official duties."

And in the Whitlock case, 193 La. at page 1055, 192 So. at page 700, the opinion ended with these two paragraphs:

"The observation of the learned trial judge that it is regretted that the statute is insufficient to cover all the reprehensible ways of tampering with jurors, and that the Courts were powerless to remedy this situation, as the matter is one which ad-dresses itself to the Legislature, is appropriate and reiterated by us.

"For the reasons assigned, the judgment of the district court, sustaining the motion to quash and discharging the accused, is affirmed."

I cannot reconcile the sustaining of the motion to quash the bill of information in Whitlock's case with the overruling of the motion to quash the bill of indictment in Kavanaugh's case.

Aside from the proposition that Act No. 43 of 1912 is not valid legislation so far as it purports to make it a crime to obtain money or property by "any other means, instrument or device, commonly called the confidence game",—the definition or description of the offense charged in the indictment in this case does not constitute a crime. Even if Act No. 43 of 1912 might be used as a substitute for the statute (Sec. 813, Rev.Stat. of 1870, Art. 945, Dart's Crim.Stat.) making it a crime to obtain money or property by false pretenses, it is not possible that the legislature intended to do away with the principle that the obtaining of money or property by false pretenses is not a crime unless the false pretenses have reference to a past or present fact. To make it a crime for a person to obtain property or money on the promise to give something in payment or exchange for it would be going back to the days of imprisonment for debt. To hold that a licensed dealer in securities is subject to imprisonment as a felon for obtaining from a customer his or her shares of stock on the promise—and for his failure to fulfill the promise—that the dealer would ex-

change the shares for certain other shares of stock, or would return to the customer his or her shares within a given time [30 days], would be to hold that in the crime of obtaining money or property by a false pretense or false representation it is not essential that the false pretense or false representation should have reference to a past or present fact. It would be going only a short step further to hold that one who buys something on credit, with the promise either to pay for it or return it within a given time—on the mere "confidence" which the seller has in the buyer's promise—is guilty of the crime of obtaining the property by means of a false pretense or false representation, or by means of the so-called "confidence game", if the buyer fails to pay for or return it within the time stipulated. Perhaps a better example would be the borrowing of money from a bank on no other security than the "confidence" with which the borrower impresses the banker, in the borrower's promise to pay the debt. The fact that the charge made in the indictment in a case like this is embellished with such words as "did wilfully, feloniously and maliciously and unlawfully" does not make the indictment valid if in fact its recitals do not define a crime. The doctrine is too trite to need citation of authority that the words "wilfully", "unlawfully", "feloniously", and "maliciously", in a bill of information or indictment, are mere conclusions of the pleader, depending altogether upon whether the recitals of fact in the bill of information or indictment actually set forth a crime, as defined by statute.

Another ruling in which I do not concur, in the prevailing opinion in this case, is that the defendant should not have been allowed to withdraw his waiver of his right to a trial by jury, when the judge decided that he should be recused, and appointed a member of the bar as judge ad hoc. The fact that the defendant had decided to waive his right to a jury trial and to be tried by the duly-elected judge of his judicial district should not be so binding upon the defendant as to constitute an irrevocable waiver of his right to a jury trial when the duly-elected judge was recused for cause and a member of the bar was appointed as judge ad hoc. The defendant never consented to waive his right to be tried by a jury when his only alternative was to be tried by the judge ad hoc, selected from among the members of the bar. I say this with due respect to the attorney who was selected to preside as judge ad hoc and who overruled the defendant's motion to withdraw his waiver of the right to be tried by a jury. In that respect the ruling of the judge ad hoc was like the erroneous ruling of the district judge in State v. Touchet, 33 La.Ann. 1154, and in State v. Robinson, 43 La.Ann. 383, 8 So. 937, and in State v. Williams, 202 La. 374, 11 So.2d 701, 702. In the latter case the court commented upon—and quoted with approval—the decision in the Touchet case, thus:

"Touchet was prosecuted for larceny, and on arraignment elected to waive his right to a trial by jury, and was tried by the judge and found guilty. He moved for a new trial, which was granted. Thereafter, he filed a motion stating that since the new

trial was granted he had elected and prayed to be tried by a jury. On objection by the district attorney the judge overruled the motion and prayer for a jury trial, 'on the ground that having once elected to be tried by the judge, and having been so tried, it was not in the power of accused, upon the granting of a new trial, to revoke his election and demand a jury trial.' On the second trial by the judge the defendant was convicted again. On appeal this court set aside the conviction and sentence on the ground solely that the judge had erred in refusing to allow the defendant to withdraw his waiver of a jury trial. In the course of the opinion rendered in the case the court stated:

"'We think the judge erred. The right of trial by jury, in criminal prosecutions, is a constitutional right always jealously guarded in Anglo-Saxon jurisprudence. This right arises and exists as to every trial—as well as to that which follows upon the granting of a new trial, as to the ordinary original trial. Being about to be tried in a criminal prosecution, the Constitution invests him with the right of jury trial, of which he cannot be deprived except on his voluntary election. His waiver of jury as to the first trial may be presumed to continue as to the new trial, unless timely application be made to revoke the same; but he cannot be deprived of this right of revocation on timely application. The only limitation on his right would be that his application should be timely—that is, made in such season as not substantially to delay or impede the course of justice. In the present case, the trial might have proceeded before a jury on the day when it was tried before the judge, and the application, made prior thereto, was entirely seasonable, and should have been granted.'"

It was on the motion of the defendant that the regularly-elected judge was recused, but the recusation must have been for a sufficient cause, otherwise there would have been no recusation. Until the judge recused himself the defendant did not know who would be appointed as judge ad hoc. On that subject my opinion is that the statement in the per curiam of the judge ad hoc, on bill of exception No. 7, is not consistent with the decisions which I have cited. The statement of the judge ad hoc is this: "After the writer took the oath and took the bench, the defendant then moved to revoke his waiver of a jury trial and asked that he be granted a jury trial, and the court, being of the opinion that he had already made his election and waived a jury trial, did not at this time have a right to revoke his waiver, the court being of the opinion that the defendant did not have a right to be tried by a specific person, but only had a right to waive a jury trial, which meant that he would be tried by the court, regardless of the person who sat on the bench. In other words, the court was of the opinion that he elected to be tried by the court and that he, thereafter, could not revoke his election, but must abide by his first election. The court being of the opinion further that to permit the defendant to change his mind and switch back and forth on the court to a jury trial, that the practical effect of such a procedure would be to continually postpone the trial of the

case, for the reason that in the country parishes of this state, jury terms are only held twice each year, and then for a period of one and two weeks, and that it was for this reason that the court denied the defendant's motion to revoke his waiver of a jury."

The apprehension of the judge ad hoc that if he should allow the defendant to withdraw his waiver of a jury trial he might "switch back and forth on the court to a jury trial" was not a just cause for overruling the defendant's motion to withdraw his waiver of a jury trial, which motion was made by the defendant as soon as the judge ad hoc had taken the oath and ascended the bench.

The fact that to allow the defendant to withdraw his waiver of a jury trial would have delayed the trial perhaps three months was not a just cause for the judge ad hoc to refuse to allow the defendant to withdraw his waiver, under the circumstances of the case. The indictment was filed on April 2, 1936, alleging that the offense was committed on February 7, 1935. The motion of the defendant to withdraw his waiver of a jury trial was overruled by the judge ad hoc on June 30, 1942, that is, seven years and nearly five months after the date of the alleged offense, and six years and nearly three months after the date of the indictment. The minutes of the district court show that on April 17, 1936, on motion of the district attorney the case was fixed for trial for Monday, April 27, 1936. On May 4, 1936, the defendant's plea to the jurisdiction, his plea of prescription and his motion to quash the indictment were taken up and argued and submitted to the court. On May 8, 1936, the three pleas were overruled, and the attorney for the defendant gave notice of his intention to apply to the supreme court for writs of certiorari, prohibition and mandamus. On May 25, 1936, this court denied the petition for writs of certiorari, prohibition and mandamus. From May 8, 1936, to March 30, 1939, the district attorney made no motion or attempt to bring the case to trial. During that period of nearly three years no entry whatever was made on the minutes of the court concerning this prosecution. Nothing was done in the case from March 1, 1940, to December 9, 1941; that is, during a continuous period exceeding a year and nine months. Thereafter the case was postponed from time to time and was not finally disposed of by conviction and sentence until June 30, 1942. It does not appear that any part of the delay of six years and three months in which the case was pending in the district court was caused by the defendant's being unprepared for the trial. On the contrary the main purpose—if not the only purpose—of the many delays in the prosecution of the case was to collect from the defendant the amount of the judgment for $13,000 which Mrs. Hancock obtained against him, and for which her attorney consented to accept $1,800 in full payment, payable $50 a month. The fact that it would have caused an additional delay of approximately three months if the judge ad hoc had allowed the defendant to withdraw his waiver of a trial by jury was a matter of no importance in comparison with the delays which had occurred already, and in comparison with the importance of the right to a trial by jury.

Referring to the excerpts from the letters written by Kavanaugh to Mrs. Hancock—quoted in the prevailing opinion in this case—it appears from the record that his version of the transaction was that he was unable to acquire the 120 shares of Louisiana Power & Light stock at a price that would make the purchase profitable to Mrs. Hancock, and that when he finally informed her of that fact she instructed him to deal with her 13,000 shares of American Gas & Power stock according to his judgment; and that in so doing a loss was sustained by reason of a decline in the market, and by no fault on his part. He pleaded that he did not in any way profit by the dealings with Mrs. Hancock's shares of American Gas & Power stock. A son of Mrs. Hancock, as a witness for the state, testified that Kavanaugh was well known by the Hancock family for about two years preceding the transaction for which he is being prosecuted; that he had called at the Hancock house several times in his dealings with Mrs. Hancock; that the witness was present during the signing of the contract on which this prosecution is founded; that the contract was made in duplicate and a copy was given by Kavanaugh to Mrs. Hancock; that Kavanaugh then had in his possession 7,000 of the 13,000 shares of American Gas & Power stock, which he had acquired for Mrs. Hancock in a previous transaction, and which she had left with him; that at Mrs. Hancock's request the witness went with Kavanaugh to the bank and delivered to him the 6,000 other shares of American Gas & Power stock; that Mrs. Hancock had had other stock transactions with Kava-

naugh, which had been satisfactory, and which the witness "supposed" had been profitable to her; and that one of these transactions was guaranteed by the Bank of Dubach to the extent of $10,000. With this explanation by the state's witness, the letters from Kavanaugh, referred to in the prevailing opinion, are not incriminating; and the testimony of the state's witness shows that the state did not prove or intend to prove anything more than what was alleged in the indictment. Ordinarily, we have nothing to do with the facts relating to the guilt or innocence of the defendant in a criminal prosecution. I refer to the facts in this case merely to show how careful the attorney for the defendant had to be in determining whether he should entrust the decision of his case to a judge or to a jury.

It is obvious that the reason why the defendant and his attorney were in a quandary as to whether they should waive the right to a jury trial was that the case depended altogether upon the question of law—whether the defendant could be convicted legally of a crime if the prosecuting officer proved the facts alleged in the indictment. The defendant and his attorney believed—as I believe—that the facts alleged in the indictment did not constitute a crime. Hence the defendant and his attorney were justified in believing as they did believe at one time that a judge would be more apt than a jury would be to decide that the facts of the case did not constitute a crime. But when the defendant and his attorney changed their mind about that, the defendant should have had restored to him his constitutional right to a trial by jury.

I am not condoning Kavanaugh's speculating with the meager fortune of an inexperienced widow—even though the speculating may have been done at her request. But, as far as the record shows, that was the extent of Kavanaugh's offending. From which it appears to me that this is another of the many instances where hard cases make bad law.

On Application for Rehearing

PER CURIAM.

The motion to quash the indictment was founded upon the following grounds:

"1. That the allegations of said indictment do not set forth the crime known as the 'confidence game' as it merely alleges the violation of a civil contract.

"2. That said indictment does not allege any crime whatsoever under the laws of the State of Louisiana.

"3. That defendant herein is being prosecuted for obtaining certain property by means of the 'confidence game'; but the allegations of the indictment show, if true, that the defendant is guilty of the crime of embezzlement, although said allegations are not in the proper form for the charge of embezzlement.

"4. In the alternative, and only in the alternative, if the Court should find that said indictment does sufficiently allege the crime of what is known as operating a 'confidence game', then, it also sufficiently alleges the crime of embezzlement, all in one count, the concluding paragraph of the indictment reading: 'Contrary to the form of the statutes of the State of Louisiana', whereas, the concluding paragraph of the indictment should have read: 'Contrary to the form of the statute of the State of Louisiana'; that is, the conclusion of the indictment must be against the statute in the singular and not against the statutes in the plural.

"5. That said indictment should be quashed further for the reason that the indictment was not returned by the Grand Jury in open Court, nor was it sealed when given to the Clerk of Court as is shown by the minutes of the Court, which are made a part hereof."

In Bill of Exception No. 5 taken when the motion to quash was overruled, it is stated that the court overruled the motion for the reason that "the indictment is properly drawn and charges a crime, hence the motion to quash was not good."

In this court, in oral argument and in his brief, counsel for the defendant contended that the allegations in the indictment merely show (1) that the defendant violated a civil contract; and (2) that there was insufficient allegations of fact in the indictment to show in what manner the defendant defrauded Mrs. Vivian E. Hancock. The authorities he cited were pertinent only to those issues. In short, those were the grounds he relied upon in contending that the indictment did not allege any crime known to the laws of this State.

The attorney for the defendant did not raise the issue that the defendant's alleged false misrepresentation relied and

acted upon by Mrs. Hancock should have been with reference to past or present facts and that the statute did not cover false representation as to a future matter. He did not make the point that Act No. 43 of 1912 did not sufficiently define the offense of "confidence game" because of the general language of the statute, i. e., "by any other means, instrument, or device", thus leaving it to the discretion of the district attorneys and grand jurors as to whether the acts of persons charged under the statute came within its provisions and thereby rendered that part of the act unconstitutional because of an illegal delegation of legislative power. The defendant did not plead the unconstitutionality of the statute. In our original opinion we answered all of the questions presented by the respective seventeen bills of exceptions reserved by the defendant. The above-stated new issues were raised by the defendant for the first time in his application for a rehearing.

This means that the district court and this court up to this time have not had these additional questions presented to them.

■■■■■■ This court has uniformly refused to consider new issues presented only on an application for a rehearing. The best evidence of what the defendant intended the language of his motion to quash to cover are the points and contentions he made thereunder. A re-examination of his brief shows conclusively that he did not present either to the district court or this court the questions now sought to be raised.

■■■■■■ It is well settled that this court cannot consider a plea of unconstitutionality of a statute of its own motion but that such a plea must be filed in the district court as a special plea wherein the pertinent provisions of the Constitution are set forth, together with the ground of alleged unconstitutionality of the statute. This was not done and it is too late for the defendant to attempt to do so at this time. The defendant is not without remedy because if there is any merit in his contention that the statute is unconstitutional, he could obtain relief in a habeas corpus proceeding.

For the above reasons, the application for rehearing is refused.

O'NIELL, Chief Justice (dissenting from the refusal to grant a rehearing).

The reason why I considered the question of constitutionality of Act No. 43 of 1912 as an important issue, in my dissenting opinion, is that the construction which must be given to the act in order to hold that the grand jury or the district attorney may define the crime in the bill of indictment makes the act unconstitutional. In such a case the question of constitutionality of a statute arises necessarily, and without being specially pleaded. But the main point which I made in my dissenting opinion is that, even if the statute could—without violating the Constitution—confer upon the grand juries and the district attorneys the authority to define the crime in the bill of indictment, the grand jury and the district attorney have not defined any crime in the indictment in this case. The trans-

action as described in the indictment was not essentially a fraudulent transaction, because, as far as the allegations go, there was no false or fraudulent pretense or representation.

I concede that I did go further in my discussion of the case in my dissenting opinion than the attorneys went in their arguments and briefs; but I never feel obliged to limit the method or extent of my analysis of a case to the method and extent of the arguments made by the attorneys in the case.