15 So.2d 809

STATE ex rel. KAVANAUGH v. MITCH-
INER, General Manager of State
Penitentiary.

No. 37298.

Nov. 8, 1943.

See, also, 203 La. 1, 13 So.2d 366.

Foster, Hall & Smith and C. J. Bolin, all of Shreveport, for relator.

Eugene Stanley, Atty. Gen., and R. H. Lee, Sp. Asst. Atty. Gen., for respondent.

HIGGINS, Justice.

The relator, who is presently confined in the Louisiana State Penitentiary, applied to the Nineteenth Judicial District Court of the Parish of East Baton Rouge for a writ of habeas corpus directed to the

General Manager of the State Penitentiary, alleging that he is illegally and unlawfully incarcerated, because

(1) Act 43 of 1912, commonly referred to as the Confidence Game Statute, under which he was convicted and sentenced, is unconstitutional, null and void, as it violates Sections 1 and 2 of Article II and Section 1 of Article III of the Constitution of Louisiana of 1921, in that the provisions of the statute are too vague and indefinite and do not sufficiently define the offense of "confidence game" so as to inform a person whether his conduct or acts may or may not come within its provisions and illegally delegate to Grand Juries and district attorneys the legislative power to define and declare what constitutes the crime.

(2) The offense for which he was convicted and sentenced had prescribed by three years, as provided in Act 323 of 1942, amending and re-enacting Article VIII of the Code of Criminal Procedure.

Relator also alleged that the part of the statute in question under which he was prosecuted is unconstitutional, being violative of Section 1 of the Fourteenth Amendment of the Federal Constitution and Section 2 of Article I of the Constitution of this State guaranteeing due process of law.

The respondent filed exceptions of no right and no cause of action and in his answer averred that the statute was constitutional and the defendant's imprisonment legal.

The district judge sustained the exceptions and decreed that the relator's commitment was valid, and denied his petition for relief. The relator then applied to this Court under its supervisory jurisdiction for writs of certiorari and habeas corpus and we granted a rule nisi. On the return day, the record was filed and the case was submitted on briefs.

The relator was charged, tried, and convicted of obtaining certain stocks valued at $13,000 by means and use of the "confidence game" in violation of the provisions of Act 43 of 1912. The judge of the Third Judicial District Court of the Parish of Lincoln, on June 30, 1942, sentenced him to a term in the Louisiana State Penitentiary of not less than one year nor more than three years. He appealed to this Court from the conviction and sentence, which were affirmed by us on March 8, 1943, his application for a rehearing being denied on April 12, 1943. State v. Kavanaugh, 203 La. 1, 13 So.2d 366. Subsequently, he began serving his sentence in the Penitentiary at Angola, where he is now confined. On July 17, 1943, he instituted the present habeas corpus proceeding.

Act 43 of 1912 reads as follows:

"Section 1. Be it enacted by the General Assembly of the State of Louisiana,

"That every person who shall obtain or attempt to obtain from any other person, or persons any money or property, by means or by use of any false or bogus checks, *or by any other means, instrument or device, commonly called the confidence*

*game,* shall be imprisoned with or without hard labor for not less than three months nor more than five years.

"Section 2. Be it further enacted, etc.,

"That in every affidavit, information or indictment under the preceding section it shall be deemed and held a sufficient description of the offense to charge that the accused did, on etc., unlawfully and feloniously obtain, or attempt to obtain, (as the case may be,) from A. B. (here insert the name of the person or persons defrauded or attempted to be defrauded and *the manner in which he was defrauded, or the attempt to defraud was made,)* his money (or property, in the case it be not money,) by means and use of the confidence game.

"Section 3. Be it further enacted, etc.,

"That nothing herein shall be taken, intended or construed to affect or repeal the laws presently in existence upon the subject of false pretense, larceny, embezzlement, forgery, and publishing as true a forged instrument." (Italics ours.)

The attack is leveled at that portion of the statute which makes it a felony to obtain money or property "by any other means, instrument or device, commonly called the confidence game, * * *".

In the case of State v. Theriot, 1916, 139 La. 741, 72 So. 191, L.R.A.1916F, 683, the constitutionality of the identical part of the Act was challenged "on the ground that the term 'confidence game' is so broad and comprehensive as to leave it uncertain whether a given act comes within the legislative intention or not". In upholding the constitutionality of the statute and re-

versing the judgment of the trial court, we said:

"In this case, the question is whether that form of swindling, called 'the confidence game,' is sufficiently well known to the public to inform the accused of 'the nature and cause of the accusation against him,' as required by article 10 of the state Constitution [1913]. [Brackets ours.]

"The indictment and bill of particulars in this case set forth the facts on which the charge is based.

" 'Confidence game' is defined as 'any swindling operation in which advantage is taken of the confidence reposed by the victim in the swindler.' Webster's International Dictionary, verbo; 8 Cyc. 564.

"Act 43 of 1912, denouncing 'the confidence game,' is broader than a similar statute passed in the state of Illinois a number of years ago, in that the former requires the indictment to set forth the means employed by the alleged swindler. The constitutionality and sufficiency of the Illinois statute has been affirmed in Morton v. People, 1868, 47 Ill. 468; Maxwell v. People, 158 Ill. 248, 41 N.E. 995; and in Graham v. People, 181 Ill. 477, 55 N.E. 179, 47 L.R.A. 731.

"In the Morton case, the court said:

" 'The nature and character of the so-called confidence game has become popularized in most of the cities and large towns, and even in the rural districts, of this broad Union, and is well understood.'

"But no attempt was made to give a definition that should be applicable to all

cases. Speaking of the devices referred to in the statute, the same court said:

" 'As these devices are as various as the mind of man is suggestive, it would be impossible for the Legislature to define them, and, equally so, to specify them in an indictment; therefore the Legislature has declared that an indictment for this offense shall be sufficient if the allegation is contained in it that the accused did, at a .certain time and place, unlawfully and feloniously obtain * * * the money or property of another by means and use of the confidence game, leaving to be made out by proof the nature and kind of the devices to which resort was had.'

"The court further said:

" 'We think that the facts of the case show a swindling operation, in which advantage was taken of the confidence reposed by the prosecuting witness in the plaintiff in error, who is unquestionably shown to have been a swindler.'

"A statute similar to the Illinois law was declared unconstitutional as to the form of the indictment by the Supreme Court of Missouri, in State v. Cameron, 117 Mo. 371, 22 S.W. 1024, in that it did not inform the defendant of the nature and cause of the accusation and the act he is required to defend.

"The court, inter alia, said:

" 'How the defendant was to know the nature of the accusations against him, under the indictment, and to prepare to defend himself against them, is difficult to conjecture. Who is to determine what a confidence game is; what are false and fraudulent representations or pretenses, unless the facts which constitute such offenses are set forth in the indictment that the court may determine, and that the defendant may know, what he is charged with and what charges he must prepare to meet?'

"No such objection can be urged against section 2 of Act 43 of 1912, as it requires the indictment to set forth the manner in which the person was defrauded or the attempt to defraud was made, or, in other words, the facts of the case.

"The question of the constitutionality of Act 43 of 1912 is debatable, and may be doubtful; but the opposition between the Constitution and the law is not sufficiently clear and strong to warrant us in decreeing their incompatibility. State v. Taylor, 34 La.Ann. [978], 981, citing Fletcher v. Peck, 6 Cranch, U.S., 87, 3 L.Ed. 162."

In 1927, the same question was again presented to this Court in State v. Echeverria, 163 La. 13, 111 So. 474. Justice Overton, who had been the district judge before whom the case of State v. Theriot, supra, was tried, was the organ of this Court in the Echeverria case and in overruling the plea of unconstitutionality therein, stated:

"Defendant moved to quash the indictment on the ground that Act 43 of 1912, which is the act denouncing the offense which the indictment charges, is unconstitutional, for the reason that it violates article 10 of the Constitution of 1913, under which it was passed, by not defining

the term 'confidence game,' which term, it is alleged, is not defined by any other law of this state, and by not defining the expression, which reads, 'or by any other means,' to be found in the first section of the act, * * *.

"The constitutionality of this act was attacked in State v. Theriot, 139 La. 741, 72 So. 191, L.R.A.1916F, 683, on identically the same ground upon which it is here attacked, and the court upheld its constitutionality, after a full consideration of the question. In People v. Bertsche, 265 Ill. 272, 106 N.E. 823, Ann.Cas.1916A, 729, an act, similar to the one here involved, was attacked on the ground that the statute was uncertain, which is virtually the ground here urged, in its definition of the offense denounced, but the court overruled the attack, saying that—

" 'No more certain definition could be given than that method of swindling called the confidence game. The means that may be used are different and varied, but that fact no more renders the statute uncertain than the different means employed to gain entrance to a building make burglary uncertain or the various means by which death may be caused render the crime of murder uncertain.'

"A confidence game, as defined in State v. Theriot, supra, is any 'swindling operation in which advantage is taken of the confidence reposed by the victim in the swindler,' and, as said in Elliott v. People, 56 Colo. 236, 138 P. 39, with reference to a similar statute, its purpose is to denounce the obtaining of money or property by means of that which is false or bogus, and (we may add) without interfering with such laws as publishing as true forged instruments or the laws relating to obtaining property by false pretense.

"In our opinion, the act does not violate article 10 of the Constitution of 1913, and hence should not be held to be unconstitutional on the grounds urged."

In State v. Courreges, 201 La. 62, 9 So. 2d 453, 455, the accused was found guilty and sentenced for violating the Confidence Game Statute and appealed to this Court. In upholding the conviction, we said:

"The essence of the offense is the swindling and defrauding of the victim after gaining his confidence. A confidence game is defined in State v. Theriot, 139 La. 741, 72 So. 191, 192, L.R.A.1916F, 683, as 'any swindling operation in which advantage is taken of the confidence reposed by the victim in the swindler.' The means that may be used are different and varied. No more certain definition could be given than that method of swindling called the 'Confidence Game.' State v. Echeverria, 163 La. [13], 14, 111 So. 474.

" 'The "confidence game" defined by Cr. Code, div. 1, § 98, Smith-Hurd Stats. c. 38, § 256, consists in gaining possession of money or property by some trick or device, or any swindling operation by which advantage is taken of the trust or confidence which the victim has reposed in the swindler. People v. Rosenbaum, 312 Ill. 330, 143 N.E. 859, 860.' 8 Words and Phrases, Perm.Ed., p. 544, Confidence Game.

"Act No. 43 of 1912 is broad and comprehensive in its terms and is designed to cover any swindling operation whereby a victim is defrauded of his money or property by the taking advantage of the trust or confidence which he has reposed in the swindler. Each case arising under this statute largely depends on its own peculiar facts and circumstances. The mere fact that the defendant, in this case, had a small account of $2.20 with the bank when the checks were drawn is of no particular importance. It would only be relevant to show intent."

The crimes of murder and burglary, as all other offenses, are statutory in this State. In defining murder, the Legislature has not attempted to state through what means the crime might be committed, that is, by the use of a gun, a knife, an ax, gas, poison, or drowning or strangling, etc. Likewise, in the case of burglary, the Legislature has not attempted to enumerate the various means the accused might employ to break into and enter the building burglarized. It is immaterial what means he used to break and enter. No one would say that the statutes providing for these crimes are unconstitutional for lack of sufficient definitions of them and that the Legislature has unconstitutionally delegated legislative power to a Grand Jury, district attorney, judge, or petit jury, to define what acts or conduct constitute the crimes of murder and burglary. The reason why this cannot be said is because the words "murder" and "burglary" have a well-recognized and well-known meaning. So, in the instant case,

since the courts have stated that "confidence game" has a well-defined, well-known and generally understood meaning, the statute cannot be said to be unconstitutional simply because it does not ad infinitum attempt to list every conceivable means through which the offense might be perpetrated.

In short, "confidence game" has a well-defined and a generally recognized and understood meaning and the legislative definition of it as given in Act 43 of 1912 is sufficiently clear to inform the general public or any person charged with the offense of its nature and the means through which it is alleged to have been perpetrated on the victim who is said to have been swindled and, therefore, the portion of the statute in controversy is not unconstitutional.

Since the legislative definition of the offense is sufficiently clear so that the pertinent part of the statute is constitutional, it is obvious that the defendant, whose case was fully heard, cannot complain on the grounds of a lack of due process of law. State v. Kavanaugh, supra.

Counsel for the relator has referred us to State v. Gardner, 151 La. 874, 92 So. 368, State v. Maitrejean, 193 La. 824, 192 So. 361, and State v. Whitlock, 193 La. 1044, 192 So. 697, and other authorities, to the effect that no act or conduct however reprehensible is a violation of any law in this State unless it is defined and clearly and unmistakably made a crime by statute. This is the rule, but this

Court having concluded that the legislative definition of the offense of "confidence game" was sufficiently clear, the question is stare decisis even though this Court with reference to different subjects has decided that the Legislature in other statutes did not sufficiently define the alleged offense so as to bring it within the provisions of the Act or that the Legislature had unconstitutionally delegated legislative power.

■ With reference to the plea of three years prescription under Act 323 of 1942, amending and re-enacting Article VIII of the Code of Criminal Procedure, the record shows that the accused was sentenced to the penitentiary by the district court of Lincoln Parish on June 30, 1942. The statute did not become effective until July 29, 1942, or twenty-nine days after he had been tried, convicted, and sentenced. The pertinent portion of the statute reads as follows:

"In felony cases when three years elapse from the date of finding an indictment, or filing an information, * * * it shall be the duty of the district attorney to enter a nolle prosequi, *if the accused has not been tried,* and if the district attorney fail or neglect to do so, the court may on motion of the defendant or his attorney cause such nolle prosequi to be entered the same as if entered by the district attorney." (Italics ours.)

It is manifest that the statute is inapplicable here because by its express provisions it does not apply where the accused has already been tried.

It appears that the purpose of the Act was to shorten the period of prescription from six years to three years. Article VIII of the Code of Criminal Procedure, as amended by Act 21 of the Second Extra Session of the Legislature of 1935, was the law in effect on this subject at the time the relator was indicted, tried, convicted and sentenced in the lower court. This statute requires prosecutions in felony cases within six years after the indictment is returned. Excepted from the benefit of this six-year period of prescription is an accused "who has escaped trial through dilatory pleas, or continuances obtained by him or in his behalf." The transcript shows that there were a number of dilatory pleas filed on behalf of the relator and, therefore, the six year prescriptive period had not elapsed in favor of him. If we were to hold that the Legislature intended that the provisions of Act 323 of 1942 applied to cases on appeal from convictions under indictments more than three years old, it would be in effect stating that the members of the Legislature intended to grant such convicted parties a pardon. The plea of prescription was properly overruled.

For the reasons assigned, the judgment of the district court is affirmed.

O'NIELL, C. J., dissents for the reasons given in his dissenting opinion in State v. Kavanaugh, 203 La. 1, 13 So.2d 324.