80 So.2d 561 (1955)
William Lee VAUGHAN et al.
v.
HOUSING AUTHORITY OF NEW ORLEANS.
No. 20467.
Court of Appeal of Louisiana, Orleans.
May 9, 1955.
Rehearing Denied June 15, 1955.
Writ of Certiorari Denied October 4, 1955.
*562 Wm. J. Guste, James M. Colomb, Jr., and Wm. J. Guste, Jr., New Orleans, for defendant-appellant.
Chaffe, McCall, Toler & Phillips, C. Manly Horton, Jr., New Orleans, for plaintiffs-appellees.
JANVIER, Judge.
This matter was submitted in the Civil District Court on an agreed statement of facts. Consequently only a question of law is presented and on this question the District Judge has written the following carefully prepared opinion with which we are in accord:
"Plaintiffs, William Lee Vaughan, Hugh Reece Vaughan, Jr., Mrs. Lyda Nell Vaughan Hester, Mary Merle Vaughan Tucker, residents of the State of Mississippi, bring this suit against the Housing Authority of New Orleans, seeking to be recognized as the owners of an undivided one-fourteenth interest, each, in and to the real estate described in the original petition. By supplemental petition, in the alternative, they seek damages in an amount equal to one-fourteenth, each, of the sum of $4250.00, which said sum was awarded by judgment of expropriation in the matter entitled Housing Authority of New Orleans vs. Ida Lee Jones, widow by first marriage of Hugh R. Vaughan, and wife by second marriage of Frederick Joseph Arthemont et als., No. 306-782 of the docket of the Civil District Court for the Parish of Orleans. The case was tried upon an agreed stipulation of facts.
"It appears from the stipulation to be found in the record, that the plaintiffs, all residents of the State of Mississippi, are the sole and only issue of the marriage between Hugh Reece Vaughan and Mary L. Fisher, and that Hugh Reece Vaughan was divorced from Mary L. Fisher in the State of Mississippi on June 26th, 1934; that he later married Ida Lee Jones, who survived him; that the sole and only issue of this marriage were Marvalene Vaughan Bobbye Jean Vaughan, and Velma Lois Vaughan; that he purchased the property which was expropriated by the Housing Authority in proceedings No. 306-782 of the Civil District Court, on January 12, 1945; that this property was purchased during the existence of the community between himself and Ida Lee Jones; that at the time of his death, Hugh R. Vaughan was the owner of the property; that he was survived by Ida Lee Jones, his widow, Marvalene Vaughan, Bobbye Vaughan and Velma Lois Vaughan; and that if William L. Vaughan were present in *563 court he would testify that the said Hugh R. Vaughan was survived by William Vaughan, Hugh R. Vaughan, Jr., Mrs. Lyda Nell Vaughan Hester and Mrs. Merle Vaughan Tucker, issue of his marriage to Mary L. Fisher; that Hugh R. Vaughan died intestate and his succession was opened under No. 293-343 of the docket of the Civil District Court, and by ex parte judgment dated November 2, 1945, Ida Lee Vaughan was recognized as surviving widow in community and placed in possession of one-half of the property in question, and Marvalene Vaughan, Bobbye Jean Vaughan and Velma Lois Vaughan were recognized as the sole heirs of the decedent and placed in possession of the remaining undivided one-half of the property.
"The records of this court show that in the matter entitled Housing Authority of New Orleans vs. Ida Lee Jones, widow of first marriage of Hugh R. Vaughan and wife by second marriage of Frederick Joseph Arthemont, No. 306-782 of the docket of this court, that judgment was rendered in favor of the Housing Authority and against Ida Lee Jones Arthemont, Marvalene, Bobbye Jean and Velma Lois Vaughan, minors, through a tutor ad hoc, expropriating the property in question in this suit.
"Petitioners allege that the property was then transferred to the Housing Authority by Ida Lee Jones Arthemont, Bobbye Jean and Velma Lois Vaughan, represented by John H. Hammel, tutor ad hoc, on August 7, 1951. Petitioners allege that they received no remuneration for their interest in the property and their title has not been divested by these expropriation proceedings.
"Defendant, by way of answer, states that Hugh R. Vaughan recited in the act by which he acquired the property on January 12, 1945, that he had been married but once, and then to Ida Lee Jones, with whom he was presently living and residing, and that in the succession proceedings entitled Succession of Hugh R. Vaughan, No. 293-343 of the docket of this court, that there is an affidavit of heirship signed by Idell Ulmer and Miss Thelma Thomas, who swore that they were intimately acquainted with Hugh R. Vaughan and his family, and that he had been married but once and then to Ida Lee Jones, and that of that marriage only three children were born, namely Marvalene, Bobbye Jean and Velma Lois Vaughan; and that relying upon the public records the defendant, Housing Authority of New Orleans, filed expropriation proceedings against these parties and obtained a judgment condemning the property to the Housing Authority upon the payment of $4,250.00, and that confirmatory thereof they passed an act of sale on August 7, 1951, from these parties to the Housing Authority.
"The defendant then called Ida Jones Arthemont in warranty. The record shows that this call in warranty was never served before the case proceeded to trial.
"The question presented to the court is whether or not the Housing Authority, a public body having the power of expropriation, may rely entirely upon the recitations contained in the public records, and thus divest forced heirs of rights in real property which do not appear on the face of the public records. The defendant, Housing Authority, relies upon Article 2641 of the Revised Civil Code of 1870, which reads as follows:
"`If, after the expropriation, any individual pretends that he had rights respecting the thing, either as owner or as creditor, he shall have recourse against the person who received the price.'
"In further support of their position they quote the case of Balot y Ripoll v. Morina, 12 Rob. 552. This case was decided in 1846, and the Supreme Court of Louisiana did refer the claimants, sisters of the testator, to the universal *564 legatee who had transferred the property to the Third Municipality for public purposes, and cited Article 2641 of the Civil Code.
"It is the opinion of this court that the plaintiffs' rights to their property, or their pro rata share of the proceeds of the property expropriated, cannot be divested, nor can they be relegated to a right of action against the widow and children of the second marriage because the decedent falsely stated that he had been married but once when he purchased the property, or that an erroneous affidavit was filed in his succession proceedings stating that he had been married but once.
"Plaintiffs' rights were acquired by inheritance from their father, Hugh R. Vaughan, by operation of law. They are forced heirs of Hugh R. Vaughan, and the law of registry is not applicable where the ownership of, or claims affecting an immovable has been vested in the claimants by the mere operation of law.
"In an expropriation proceeding it is necessary to cite the owner, and both the Civil Code and the Constitution provide for an equitable and previous indemnification. Articles 2628 and 2629 of the Civil Code, and Article 1, Section 2, of the Constitution of Louisiana.
"In the opinion of the court, plaintiffs are entitled to recover judgment against the Housing Authority of New Orleans in the amount of $303.57 to each, together with legal interest from date of judicial demand until paid."
We would have no doubt whatever as to the correctness reached by the District Judge were it not for the wording and possible effect of Article 2641 of our LSA-Civil Code and for the decision of our Supreme Court rendered in 1846 in Balot y Ripoll v. Morina, 12 Rob. 552.
Article 2641 of the Code is the final one in Chapter 11 on "Compulsory Transfer of Property" (expropriation). It reads as follows:
"If, after the expropriation, any individual pretends that he had rights respecting the thing, either as owner or as creditor, he shall have recourse against the person who received the price."
There can be no doubt at all as to the interpretation which, in 1846, was placed on this article by our Supreme Court in the cited case. There certain heirs of Sebastian Ripoll had themselves placed in possession of his estate which included several pieces of real estate. They sold some of the parcels of real estate to private individuals and one parcel to the Third Municipality in order that a street might be opened. After the sale, other heirs appeared who were legal heirs but were not of record as owners of the property, and they attempted to set aside the sale of the various pieces of property and attempted to secure from the City their proper proportion of the price which it had paid for the parcel of land which was bought for public purposes. The Supreme Court held that as to those pieces of land which had been sold to private persons the purchasers had acquired no greater rights than the vendors had and that therefore the additional heirs who had later appeared could recover their just proportion of the purchase price from the purchasers.
The Court then discussed the parcel which had been sold to the Third Municipality and said that the City had the right to and could have expropriated it and, quoting the article of the Code, which is now 2641 but was then 2611, said that, as a result of that article, since the "apparent" owners of record had received the price, and since the City could have expropriated the property, the legal heirs who later appeared but whose rights were not of record had no recourse against the City and could have recourse only against the other heirs who had sold the property. We note particularly the following language:
"The sale of the lot to the Third Municipality was intended for public purposes; * * *."
* * * The apparent heir received the price, and we think that, *565 under the terms of art. 2611, to wit, `If, after the "expropriation, any individual pretends that he had rights respecting the thing, either as owner or as creditor, he shall have recourse against the person who received the price', which is clearly applicable, under the admissions, to the present controversy; the only recourse of the appellants is against the apparent universal legatee, for three-fourths of the price in the general settlement of the estate."
That decision cannot be interpreted in any other way than as a holding that, as a result of the codal article, where property is expropriated from those who are record owners, legal heirs, whose rights may not be of record, have no recourse against the purchaser of the property but must seek to obtain redress from the other heirs who have disposed of the property.
It is well recognized, of course, that although the doctrine of stare decisis is contradictory to civil law principles and originally had no place in our law, it has been recognized as effective in many instances by our Supreme Court. That it was vigorously opposed by Edward Livingston is well known. See Tulane Law Review, Vol. 11, at page 183. That it is gradually finding its way into the jurisprudence of Louisiana is shown in an article entitled The French Language and the Louisiana Lawyer, 5 Louisiana Law Review, at page 171. And that it has been recognized by our Supreme Court in many instances is made evident by many decisions, notably the following: Quaker Realty Co. v. Labasse, 131 La. 996, 60 So. 661; Rauschkolb v. Di Matteo, 190 La. 7, 181 So. 555; State ex rel. Kavanaugh v. Mitchiner, 204 La. 415, 15 So.2d 809. See also concurring opinion of Judge Regan in Le Blanc v. Coca Cola Bottling Co., La.App., 55 So.2d 7.
Whether or not the doctrine of stare decisis should receive complete recognition in Louisiana is unimportant to an inferior appellate court if the Supreme Court, in some other case which cannot be distinguished, has clearly and unmistakably announced a principal which is applicable to the case under consideration by the inferior court. Therefore, we would not have the temerity to attempt to reach a conclusion clearly at variance with a view announced by the Supreme Court were it not for the fact that the decision relied upon by the Housing Authority was rendered more than one hundred years ago before the appearance in our State Constitution and in the Fourteenth Amendment of the Federal Constitution of the so-called due process clause. That clause first made its appearance in our State Constitution in 1879 when it appeared in Article 6 in the following language:
"No person shall be compelled to give evidence against himself * * * nor be deprived of life, liberty or property without due process of law."
The due process clause first appeared in the Federal Constitution in the Fourteenth Amendment, which according to the certificate of the then Secretary of State, William H. Seward, became effective on July 28, 1868. In that amendment to the Federal Constitution it appears as follows:
"* * * nor shall any State deprive any person of life, liberty, or property, without due process of law; * * *."
While there have been innumerable judicial decisions on the question of just what rights are granted or protected by the due process clause, the meaning of the clause with which we are concerned is stated in 16 C.J.S., Constitutional Law, § 569, at page 1153, as follows:
"Due process of law in its procedural aspect requires a notice and opportunity to be heard in an orderly proceeding adapted to the nature of the case, in accord with established rules."
In State v. Young, 142 La. 865, 77 So. 772, 774, our Supreme Court quoted with approval from Black on Constitutional Law as follows:
"`Due process of law in judicial action,' * * * `implies a regular proceeding before a competent court, *566 possessing jurisdiction, with opportunity to the party to appear and be heard in his own defense or in rebuttal of the claim made against his property.' * * *".
In Southern Bell Tel. & Tel. Co. v. Louisiana Public Service Commission, 185 La. 729, 170 So. 548, the Supreme Court again quoted the same language and stated that in State v. Young, supra, it had given its approval to that language.
It is made perfectly clear that the present plaintiffs were in no way made parties to or represented in the expropriation proceeding, and it is also made clear in the stipulation that those plaintiffs were children and forced heirs of the deceased, Hugh R. Vaughan, and that accordingly, as a matter of law, they, on the death of their father, became joint owners of the property which was expropriated.
There are two legal principles which are recognized in Louisiana and are not in disputeone is that the rights of legal heirs, and especially forced heirs, are sacred and cannot be divested except by proper legal proceedings against those heirs, and the other is that the law of registry, Articles 2251-2266 of our LSA-Civil Code, has no application where the ownership of immovable property becomes vested by operation of law. In Bishop v. Copeland, 222 La. 284, 62 So.2d 486, 488, appears the following:
* * * Defendant's initial contention, which is reurged here under his exception of no cause of action, is that plaintiffs' demand should nontheless be rejected for the reason that their ownership has not been registered and that he, being a third person dealing with immovable property, was entitled to depend on the faith of the public records.
"There is no merit in the point. It is well settled that our law of registry, Articles 2251 through 2266 of the LSA-Civil Code, is not applicable when the ownership of, or claim affecting the immovable has become vested in the claimant by mere, operation of law. See Long v. Chailan, 187 La. 507, 175 So. 42 and Dugas v. Powell, 207 La. 316, 21 So.2d 366. * * *"
We thus find that the rights of the plaintiffs, who were legal heirs of the deceased, were fixed by operation of law; they were his forced heirs and became joint owners by the mere fact of his death, and their rights depended in no way upon any public registration or recordation of their inheritance of the property. And we find too that, if the codal article be interpreted as the Housing Authority would have us interpret it, these children were deprived of their rights without notice, without hearing, and without being afforded an opportunity to be heard and, therefore, according to the meaning of the due process clause of either Constitution, without due process of law.
As already stated, when, in 1846, the Supreme Court rendered its decision in Balot y Ripoll v. Morina, supra, there was no requirement of due process in either the State or the Federal Constitution, and, in the absence of such a clause, the codal article possibly could be used to accomplish the result which was there brought about. We think that, in the light of the historical developments since, the same interpretation may not be given to the article, for if it be so interpreted, it would seem to be violative of the due process clause of the State Constitution, art. 1, § 2, L.S.A. and of the Fourteenth Amendment of the Federal Constitution.
Counsel for the Housing Authority assert that, while it is true that there was no due process clause in either Constitution when that decision was rendered, there were codal and constitutional provisions in our Code and in our State Constitution which should be interpreted as having the same meaning as the due process clauses of the Constitutions under discussion.
Counsel point, for instance, to Article 2 of our Civil Code of 1808[1] which was *567 taken from the Code Napoleon and which reads as follows:
"No one can be compelled to part with his property, unless by reason of public utility and on consideration of an equitable and previous indemnification."
They also direct attention to Article 489 of our Civil Code of 1825 from which we now quote:
"No one can be divested of his property, unless for some purpose of public utility, and on consideration of an equitable and previous indemnity, and in a manner previously prescribed by law."
And counsel also point to Article 109 of our Constitution of 1845 which reads as follows:
"No ex post facto law, nor any law impairing the obligation of contracts, shall be passed, nor vested rights be divested, unless for purposes of public utility, and for adequate compensation previously made."
We think that no one of the quoted provisions expresses the meaning which is found in the due process clause of our Constitution and in the Fourteenth Amendment of the Federal Constitution.
We conclude that as the Supreme Court in 1846 interpreted the article, which was then 2611 of our Civil Code, that article would be violative of the due process clause, though it was not violative of any such clause or constitutional provision which was effective at that time. To give it the same interpretation now would be to allow it to cause a violation of the due process clause and to deprive the plaintiffs of their property without due process. It would permit a legal owner who needs no registration to be deprived of his ownership and his rights in and to property which he has inherited without being made a party or given notice of the proceedings which would result in his being deprived of his property.
Counsel say that in the case of expropriation, which is for a public or quasi public purpose, if the municipality or quasi public corporation desiring to expropriate may not rely upon the public records, progress will be interfered with and development made extremely difficult. This may be true, but if so, it is a burden which can be better borne by the public than by the individual who otherwise might be deprived of his rights without due process of law.
The judgment appealed from is affirmed at the cost of appellant.
Affirmed.
NOTES
[1] Now LSA-C.C. art. 497.