480 So.2d 354 (1985)
J.C. JENNINGS, Plaintiff-Appellant,
v.
Gloria Jennings Tedder GOLDSBY, Defendant-Appellee.
No. 84-898.
Court of Appeal of Louisiana, Third Circuit.
December 11, 1985.
*355 Charles W. Seaman, Natchitoches, for plaintiff-appellant.
Gahagan & Gahagan, Marvin F. Gahagan, Natchitoches, for defendant-appellee.
Before GUIDRY, DOUCET and LABORDE, JJ.
LABORDE, Judge.
J.C. Jennings appeals a judgment in favor of his sister, Mrs. Gloria Jennings Tedder Goldsby, dismissing his action to set aside a conveyance of property from Lawrence Jennings to Mrs. Goldsby.[1] We affirm in part, reverse in part, and render judgment.
The thirty-six acre tract involved here was sold to Mrs. Lawrence Jennings on March 1, 1950. The title was taken in her own name, but all parties agree that the property fell into the community of acquets and gains then existing between her and her husband, Lawrence Jennings. Mr. and Mrs. Lawrence Jennings are the parents of the appellant and of the appellee.
During most of the nine month period preceding her death on May 12, 1975, Mrs. Jennings resided with and was nursed by her daughter, Mrs. Goldsby. Prior to moving in with her daughter, Mrs. Jennings had suffered a heart attack, gone blind, and become a total invalid. The final two weeks of her life were spent in a nursing home where she developed pneumonia and died.
On May 7, 1975, Lawrence Jennings presented Mrs. Goldsby with the title to the disputed property, declaring, testified Mrs. Goldsby, "I didn't have any money to pay anybody to take care of your mother and you did, so I'm giving you this land." Mrs. Goldsby accepted the title, but delayed recording it until January 31, 1978. Appellant J.C. Jennings was a witness to the conveyance to Mrs. Goldsby.
Appellant attacks the conveyance on various grounds. First, he urges that Lawrence Jennings was not capable of transferring the property absent Mrs. Jennings' written consent. He cites former La.Civ. Code art. 2334, which was in effect at the time of the conveyance:
"Common property is that which is acquired by the husband and wife during the marriage in any manner different from that above declared. But when the title of community property stands in the name of the wife, it can not be mortgaged or sold by the husband without her written authority or consent."
*356 Article 2334 created an exception to the old rule which provided that, during the existence of the community between the spouses, the husband was the head and master and did not need his wife's consent to alienate the community's immovable effects by onerous title or to sell or give away particular community movables. Azar v. Azar, 239 La. 941, 120 So.2d 485 (1960).
The conveyance here was, as will be demonstrated, neither a sale nor a mortgage. It was, however, an alienation of community property, taking the form of a remunerative donation. As such, the requirements of article 2334 applied to it with full force.
Mrs. Goldsby established, by uncontradicted parole evidence, that her mother knew about and approved of Lawrence Jennings' conveyance of the acreage. It is a familiar rule of law that evidence of witnesses which stands uncontradicted must be accepted as true. Olds v. Ashley, 250 La. 935, 200 So.2d 1 (1967). Nonetheless, Lawrence Jennings was powerless to convey his wife's one-half undivided interest in the acreage absent her written authorization or written consent; evidence of neither is in the record. Lawrence Jennings was therefore able, at most, to transfer only his own undivided interest in the acreage. Mrs. Jennings' interest remained in her estate until the moment of her death, at which moment it passed via the laws of intestate succession to her descendants.
Appellant next cites former La. Civ. Code art. 2264 and argues that Mrs. Goldsby's failure to record the conveyance prior to Mrs. Jennings' death had the effect of vesting Mrs. Jennings' heirs with ownership of one-half of the property. Our conclusion above that Mrs. Jennings' undivided interest was never alienated from the community existing between her and Mr. Jennings renders this issue moot. We note that title to Lawrence Jennings' former interest was recorded in Mrs. Goldsby's name in 1978, some four years prior to Lawrence Jennings' death on June 30, 1982. We do not hold, however, that recordation was required to perfect Mrs. Goldsby's title to Lawrence Jennings' interest. Article 2264 provided that "[n]o notarial act concerning immovable property shall have any effect against third persons, until the same shall have been deposited in the office of the parish recorder, or register of conveyances of the parish where such immovable property is situated."[2] This provision codifies the public records doctrine in Louisiana. But recordation in this case, not accomplished until 1978, was not needed to perfect Mrs. Goldsby's title. Her ownership of a one-half undivided interest arose from the conveyance to her from her father. All that recordation does for an instrument, valid or fraudulent, is to permit its introduction into evidence for purposes of asserting its validity against third persons. Gulf South Bank & Trust Co. v. Demarest, 354 So.2d 695 (La.App. 4th Cir. 1978). The failure to immediately record the title made Mrs. Goldsby's title vulnerable to claims of subsequent vendees and mortgagees of Lawrence Jennings, but none arose.
Appellant's reference to Vaughan v. Housing Authority of New Orleans, 80 So.2d 561 (La.Ct.App.1955) is misplaced. Vaughan holds that the rights of a forced heir arise at the moment of his parent's death, and that those rights depend in no way upon recordation of his inheritance of the property. But an individual has no inheritance rights to property which is no longer in his parent's estate when that parent dies. Lawrence Jennings' undivided interest in the acreage had passed out of the Jennings' community and into the hands of Mrs. Goldsby before Mr. Jennings died. His interest in the property did not revert, nor could it have reverted, to his heirs upon his death in 1982.
We turn now to appellant's next argument, which urges that we rescind the conveyance on the grounds that no consideration was paid. The argument is apparently based on La.Civ. Code art. 2444:
"The sales of immovable property made by parents to their children, may be attacked *357 by the forced heirs, as containing a donation in disguise, if the latter can prove that no price has been paid, or that the price was below one-fourth of the real value of the immovable sold, at the time of the sale."
The document transferring title to Mrs. Goldsby is entitled, we note, a "Cash Sale Deed." The document recites that the "sale" was made for "Ten Dollars and Other Valuable Consideration." Appellee does not deny appellant's allegation that neither ten dollars nor any other price was paid for the property. The contract of sale is an agreement by which one gives a thing for a price in current money, and the other gives the price in order to have the thing itself. La.Civ. Code art. 2439. There was, therefore, no sale in this case. But where the conveyance fails as a sale, it may succeed as a remunerative donation.
The remunerative donation is not a real donation, if the value of the services to be recompensed thereby being appreciated in money, should be little inferior to that of the gift. La.Civ. Code art. 1525.
In consequence, the rules peculiar to donations inter vivos do not apply to onerous and remunerative donations, except when the value of the object given exceeds by one-half that of the charges or of the services. La.Civ.Code art. 1526.
The circumstances of Mrs. Jennings' health, described above, no doubt placed exceptional demands on Mrs. Goldsby. The care and support she provided daily for nine months went far beyond the usual parent-child gratuity and were no doubt equal to the value placed on them by the remunerating donor, Mr. Jennings. See Sauce v. Williams, 434 So.2d 613 (La. App.3d Cir.1983).
The record reveals that the parties entered into the following stipulation prior to trial: "The value of the thirty-six acres which is at issue in this lawsuit was $250.00 on May 7, 1975, when Lawrence Jennings sold the property to Gloria Jennings Tedder Goldsby, and on January 31, 1978, when that deed was recorded."[3] We thus accept the appellant's assertion that the thirty-six acre tract had a value of $9,000.00. Mr. Jennings' undivided interest had, therefore, a value of $4,500.00.
But to bring the conveyance under the rules governing donations inter vivos, the appellant then had the burden of establishing that the donated property, worth $4,500.00, exceeded by one-half that of the services rendered by Mrs. Goldsby. Fenger v. Cagnolatti, 292 So.2d 901 (La.App. 4th Cir.1974). This burden the appellant has failed to carry. The transaction is thus given effect as a conveyance unhampered by the rules peculiar to real donations inter vivos. Mrs. Goldsby was therefore not required, as appellant maintains, to accept the donation in conformity with La.Civ. Code art. 1540. That article requires acceptance of donations inter vivos in precise terms.
Appellant's final argument is that the services rendered by Mrs. Goldsby were not compensable because they were owed to her mother under La.Civ.Code art. 229, which provides in pertinent part:
"Children are bound to maintain their father and mother and other ascendants, who are in need, and the relatives in the direct ascending line are likewise bound to maintain their needy descendants, this obligation being reciprocal. This reciprocal obligation ... arises only upon proof of inability to obtain these necessities by other means or from other sources."
We agree. However, nothing in article 229 prevents parents from reimbursing a child who has performed this statutory obligation. Indeed, the case law establishes that a child who performs this obligation has a cause of action against his brothers and sisters for partial reimbursement. Muse v. Muse, 215 La. 238, 40 So.2d 21 (1949). The child may also assert the claim upon the estate of the deceased, and the heirs must contribute to its payment. In *358 re Olivier's Estate, 18 La.Ann. 594 (1866). We thus conclude that, under these circumstances, appellee Mrs. Goldsby would likely have had a claim upon the Jennings' estate equal to the value of the land conveyed to her.
For all of the above and foregoing reasons, the judgment of the trial court dismissing appellant's demand is reversed in part. We recognize the conveyance as valid insofar as it purports to transfer Lawrence Jennings' one-half undivided interest in the acreage to Mrs. Goldsby. We recognize the heirs of Mrs. Jennings, including Mrs. Goldsby, as coowners in indivision of Mrs. Jennings' one half interest in the acreage. Costs of this appeal are taxed one-half to appellant and one-half to appellee.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.
NOTES
[1] The above numbered and entitled matter was consolidated at the trial level and on appeal with the case of A. W. Jennings v. Gloria Jennings Tedder Goldsby, 480 So.2d 358 (La.App. 3d Cir. 1985). We will dispose of all issues presented in both cases in this opinion, but will render a separate decision in A. W. Jennings, supra.
[2] Article 2264 has been redesignated as LSA-R.S. 9:2754, effective January 1, 1985.
[3] Both parties agree that the aggregate value of the thirty-six acres is $9,000.00. Their obvious intent was, therefore, to stipulate to a value of $250.00 per acre.