510 So.2d 1332 (1987)
Tommy H. ROBINETTE and his wife, Alice Faye Robinette, Plaintiffs-Appellees,
v.
Edwin E. MYERS, Defendant-Appellant.
No. 86-690.
Court of Appeal of Louisiana, Third Circuit.
June 26, 1987.
*1333 H. Stuart Wright of Wright and Wright, Natchitoches, for defendant-appellant.
Marvin F. Gahagan of Gahagan and Gahagan, Natchitoches, for plaintiffs-appellees.
Before GUIDRY, STOKER and DOUCET, JJ.
STOKER, Judge.
Edwin E. Myers appeals a ruling of the trial court holding that he has no interest in a tract of land in Natchitoches Parish formerly belonging to his deceased mother.
Zeola Gartman died on April 13, 1984, leaving three children: Alice Faye Robinette, Edwin E. Myers and Billie Heuer. Mrs. Gartman's succession was never opened. On December 12, 1984 Alice Faye and her husband, Tommy Robinette, instituted this suit for partition by licitation of 1.27 acres owned by Mrs. Gartman at the time of her death. The Robinettes claimed that Mrs. Heuer had sold to them all of her interest in the property, and that consequently they were owners in indivision of a two-thirds interest, while Myers, as the third heir, owned a one-third interest. They argued that the property could not be partitioned in kind, and a sale at a sheriff's auction was sought.
Myers answered by claiming that his mother had sold him the property in question in 1977. At the trial of the matter a chain of title was produced beginning with the sale of a two-acre tract to Mrs. Gartman by her father in 1958. Mr. Myers alleged that these two acres were actually the same as the 1.27 acres described by the plaintiffs. A dispute arose as to the exact location of the two acres.
The trial judge found the property descriptions inadequate and nullified the following deeds: the 1958 transfer to Mrs. Gartman, a correction deed executed in 1971 in connection with that transfer, a 1971 document by which Mrs. Gartman's former husband signed over to her any community property interest he may have had in the land, and the sale of the land to Edwin Myers in 1977. The judge declared the Robinettes to be full owners of the land, and held that Myers had no interest in it. Myers appeals.

CHAIN OF TITLE
The following conveyances are involved in this case:

*1334 1. January 20, 1958: Henry Stewart sold to his daughter Zeola Gartman property described as:
"Two (2) acres out of the Northeast corner of the Southwest Quarter of the Southwest Quarter, Section 2, Township 12 North, Range 7 West. This property being two (2) acres North and South by One (1) acre East and West, located and situated in Natchitoches Parish, Louisiana."
2. September 21, 1971: Mrs. Gartman's husband, from whom she was legally separated, conveyed to her his community property interest in land described in the same manner as that in the Stewart-Gartman transfer, but with an additional clause:
"being bounded on the East by property of Otto Evans, on the West by property of Henry Stewart, on the North by the Ashland-Chestnut blacktop road, and on the South by property of Henry Stewart...."
3. October 6, 1971: Henry Stewart and Zeola Gartman executed a "correction deed," which added the boundaries in Mr. Gartman's conveyance to the 1958 description.
4. January 5, 1977: Mrs. Gartman mortgaged her property to secure a bank loan. The description was the same as that found in the correction deed.
5. September 30, 1977: Mrs. Gartman sold the property described in the mortgage to her son, Edwin Myers. Myers assumed the mortgage payments. This sale was not recorded.
6. October 20, 1980: The five children of Henry Stewart, including Mrs. Gartman, partitioned property formerly owned by their parents, who had died a few years before. Although Mrs. Gartman and one of her sisters had received two acres each from their father prior to his death, leaving 36 acres in his estate, the two daughters agreed to include their two acres in the calculation. Thus, the children divided 40 acres, more or less, between the five of them. Each took an 8.27-acre lot. Mrs. Gartman received Lot 5.
7. December 8, 1980: Mrs. Gartman sold to the Robinettes the following:
"That certain lot of ground, together with all buildings and improvements located thereon, situated in the Southwest Quarter of the Southwest Quarter of Section 2, Township 12 North, Range 7 West, Natchitoches Parish, Louisiana, and being more particularly described as Lot 5 as shown on a plat of survey by Billy D. Crow, dated September 24, 1980, and recorded in Conveyance Book 365, page 831, Records of Natchitoches Parish, Louisiana, containing 8.27 acres, more or less, LESS AND EXCEPT the North 1.27 acres with dwelling house and all improvements."

SALE TO MRS. GARTMAN
We find error by the trial court in nullifying the 1958 sale from Henry Stewart to Zeola Gartman, and the 1971 correction deed. Both were properly executed and recorded. While the description in the 1958 deed may have been insufficient to allow the location of the property from the four corners of the document, the 1971 correction cured any deficiencies by adding four boundaries. See Gary v. Bullock, 206 La. 231, 19 So.2d 120 (1944); Authement v. Theriot, 292 So.2d 319 (La.App. 1st Cir. 1974).
The purpose of a correction deed is to admit mutual error and to change the original instrument to conform to the true intent of the parties. Neblett v. Placid Oil Company, 257 So.2d 167 (La.App. 3d Cir. 1971), writ denied, 258 So.2d 376 (La.1972). The later deed would clearly be valid as between the parties, and under certain circumstances where no prejudice occurs, it may be valid as to third persons. Blevins v. Manufacturers Record Publishing Co., 235 La. 708, 105 So.2d 392 (1957). Edwin Myers does not contest the validity of the correction deed. Since it was executed six years before Myers' acquisition, and contains the same description as that contained in Myers' 1977 deed, we see no reason *1335 not to give it its intended effect. We disagree with the trial judge's conclusion that the 1958 sale and the subsequent correction deed were null.
Although the parties accept the description in the correction deed, they interpret it differently. In 1958 Mrs. Gartman built a house in the vicinity of the property in question. Myers argues that since Henry Stewart's intent was to give Mrs. Gartman a homestead, the two acres should be calculated around the house. Under his view, the tract would have been bounded on three sides by property of Henry Stewart. The Robinettes measured the two acres starting in the far northeast corner of what was Henry Stewart's property. The house falls outside these two acres. Myers did not dispute the Robinettes' placement of the house in relation to the 8.27-acre lot. Thus, the question becomes: where is the two-acre tract in Myers' deed located in relation to the house and to Lot 5?
In the execution of deeds the intentions of the parties must be gathered from an inspection of the instrument itself, without the aid of extrinsic evidence, if their intentions can be thus ascertained. If the description is so ambiguous as to leave doubt as to the parties' intent, extrinsic evidence may be resorted to as an aid in construction. Placid Oil Company v. Young, 246 So.2d 306 (La.App. 3d Cir. 1971), writ refused, 259 La. 56, 249 So.2d 201 (1971). In this case, the corrected description is not ambiguous. It states that the eastern boundary of Mrs. Gartman's two acres coincides with the western boundary of one Otto Evans. If the property were located further to the west, as Myers contends, it would be bounded on the east by property of Henry Stewart. The deed is clear that it was intended to convey two acres in the far northeast corner of Henry Stewart's property. In any case, the extrinsic evidence is not helpful in locating the property. It only showed that Henry Stewart intended to provide Mrs. Gartman with property upon which to build a home, and that Mrs. Gartman did build a home. It is quite conceivable that Mrs. Gartman, who never had her two acres surveyed, built her home in the wrong place.
We conclude that the two acres sold to Mrs. Gartman in 1958 and subsequently mortgaged by her were located in the extreme northeast corner of Henry Stewart's tract, but that the house was not on the two acres.

MYERS' DEED
The title obtained by Myers in the 1977 transfer from Mrs. Gartman was never recorded. Under LSA-C.C. art. 1839, an instrument involving immovbale property shall have effect against third persons only from the time it is recorded. See also LSA-R.S. 9:2721-23. However, where an heir obtains title by inheritance, the "public records doctrine" will not protect that heir from the unrecorded title of a vendee of the decedent. Jennings v. Goldsby, 480 So.2d 354 (La.App. 3d Cir.1985). Therefore, Myers' unrecorded deed from his mother would be valid as against any of the subject property inherited by his sisters, but would not be valid as against any of that property purchased by them.

ROBINETTES' DEED
The Robinettes' deed conveys to them Mrs. Gartman's 8.27-acre tract, "LESS AND EXCEPT the North 1.27 acres with dwelling house and all improvements." The trial judge evidently found this deed valid, yet he did not discuss the exception in declaring the Robinettes owners of the full 8.27 acres. We find the description of the 1.27-acre exception to be adequate.[1] Thus, the Robinettes' deed conveyed *1336 to them only seven acres. As to these seven acres, they were third party purchasers, and Myers is not entitled to assert his unrecorded title against them.
The remaining 1.27-acre tract was the property of Mrs. Gartman at her death. The rationale of Jennings v. Goldsby, supra, would allow Myers to assert his unrecorded title against anyone whose interest in the remaining portion of his two acres was acquired by inheritance from his mother. Thus, Myers' 1977 title may be asserted against Mrs. Robinette's one-third interest. However, as the Robinettes were subsequent vendees of Mrs. Heuer's interest, the "public records doctrine" applies to that interest. As a result Myers is the owner of a two-thirds interest in this property; the Robinettes, of the one-third interest purchased from Mrs. Heuer.
The portion of Mrs. Gartman's 1.27-acre tract that was not located within Myers' two-acre tract would be transferred by inheritance laws. Myers would be entitled to a one-third interest, Mrs. Robinette to one-third, and the Robinettes, as purchasers of Mrs. Heuer's interest, to the remaining one-third.

PARTITION ACTION
The Robinettes initiated this action as a suit to partition by licitation property owned in indivision with Myers. The trial court's rulings precluded the need for a partition. As we have concluded that the Robinettes and Myers do indeed hold property in indivision, partition is in order. Before discussing disposition of this case for partition, another matter requires our attention. Myers' answer contains an alternative allegation to the effect that if he did not own all of the property in question, "it is not known at this time what interest each individual has in the property since this would be subject to the inheritance laws of Louisiana and since there has not been a Judgment of Possession declaring the respective ownership, this matter is not in a posture in which a Petition by Licitation is procedurally acceptable."
In addressing the trial judge at the beginning of trial, plaintiffs' counsel referred the court to the case of Dobrowolski v. Dobrowolski, 215 La. 1078, 42 So.2d 760 (1949). Counsel urged that this case is authority for the proposition that completion of a succession proceeding and a placing of heirs in possession is not necessary before property may be partitioned by licitation. The issue never arose again. The defendant did not raise this issue on appeal either through assignment of error or argument in his brief.
It is not necessary that we decide whether the Dobrowolski case stands for what plaintiffs contend it does. We consider that the proposition may be true as a general rule, but not without qualification. We do think it essential, from the point of view of integrity of title, that the record reflect the existence of usual matters established in succession proceedings concerning death, heirship, the freedom of succession from debt, and that the property sought to be partitioned constitutes the entire estate. See Crain v. Crain, 206 So.2d 521 (La.App. 1st Cir.1968) and Montz v. Montz, 2 So.2d 251 (La.App. Orleans 1941).
The testimony in this case established that Zeola Gartman died on April 13, 1984. Beyond this fact the record is vague or lacking in proof of other facts necessary to reflect a clear title. For example, it appears *1337 accepted by the parties that Alice Faye Robinette, Edwin E. Myers and Billie Heuer were the heirs of Mrs. Gartman, but the record does not contain evidence that they were her only heirs. We will remand this case to the trial court for further proceedings, and in doing so we hold that the trial court should satisfy itself that plaintiff has established in the record all the requisite facts justifying proceeding to a partition.

CONCLUSION
As noted above we hold that the trial court erred in holding that the plaintiffs were the exclusive owners of the property in question. Even in their petition the plaintiffs conceded that defendant owned an undivided one-third interest in the property.
For the reasons stated above we reverse the judgment of the trial court and remand this case to the trial court for further proceedings consistent with the findings and holdings stated above. The costs of this appeal are assessed to the appellees.
REVERSED AND REMANDED.
NOTES
[1] We think that the determination of the depth of the 1.27-acre tract, and thus of the south boundary, would require the services of an expert civil engineer or land surveyor. The following comments illustrate our point.

The 1.27-acre tract would contain 59,131.2 square feet (43,560 square feet per acre × 1.27 acres). By dividing that square footage by known dimensions, the unknown boundaries could be located if the northeast and northwest corners were square, i.e., formed 90 degree angles. The survey entered into evidence shows that the corners of Lot 5 are most likely not square. If we are correct, we could not compute the dimensions of the eastern and western boundaries. As an illustration we note that if the corners were square, so that the northern and southern boundaries were equal, the length of the eastern and western boundaries could be determined by dividing the total square footage by the known northern boundary. That calculation would be as follows:
59,131.20 square feet + 285.60 feet = 207.04 feet